# Revised

# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

—————————

m 99-11059

—————————

CHARLES M. GILES,

Plaintiff-Appellee-
Cross-Appellant,

VERSUS

GENERAL ELECTRIC COMPANY,

Defendant-Appellant-
Cross-Appellee.

—————————————

Appeals from the United States District Court
for the Northern District of Texas

—————————————

March 19, 2001

Before JOLLY, JONES, and SMITH,
Circuit Judges.

JERRY E. SMITH, Circuit Judge:

This appeal arises out of a disability dis-crimination suit filed by Charles Giles against General Electric Company ("GE"), which ap-peals the denial of its motion for judgment as a matter of law ("j.m.l.") following a verdict in favor of Giles. GE further appeals the award of attorneys' fees. Giles cross-appeals the quantum of damages and the dismissal of his retaliation claim under state law. We affirm in part, reverse in part, and remand for further proceedings.

I.

Beginning in 1978, Giles worked as a

Class A Machinist.[1] In April 1995, he injured his back lifting toolboxes while traveling home from a customer location. Although he tried to work thereafter, the pain forced him, in a few days, to seek treatment from Dr. Eric Coligado, who in July 1995 released him to return to GE, where he attempted to work for approximately a week before succumbing again to back pain.

The following month, Coligado prescribed a functional capacity evaluation ("FCE"), on the basis of which[2] he concluded that Giles had attained maximum medical improvement and rated him as nine percent impairedSSmeaning Giles exhibited ninety-one percent of the physical capacity of an unimpaired person. In September 1995, Coligado released Giles to work once again, this time under permanent lifting restrictions.

On October 12, Coligado released Giles to a transitional work program with a twenty-pound lifting restriction but, five days laterSSapparently at the urging of a nurse in the employ of GESSrescinded the restriction. Giles refused to work, however, contending that he was unable to lift even twenty pounds. Upset with what he regarded as GE's interference with his relationship with Coligado, Giles thereafter sought treatment from Dr. John Milani, who performed surgery in March 1996 and thereafter prescribed a second FCE. In light of the FCE results, Milani recommended in June 1996 that Giles limit his work to a "medium physical demand level" and shortly thereafter released him to work but imposed a permanent lifting restriction of fifty pounds.

On August 6, 1996, Milani informed GE that the restrictions would not allow Giles to return to work as a Class A Machinist.[3] In an August 13 meeting with GE representatives, Giles learned that, based at least in part on Milani's findings, GE would not allow him to return to work.

Giles filed an application for disability pension GE in November 1996. As a condition of eligibility for the pension, Giles asserted that he was "permanently incapacitated for further work." GE approved the application, and Giles began receiving payments under the pension plan in April 1997. Giles further sought long term disability ("LTD") benefits, which GE agreed to pay through April 1997, backdated to October 1995. After Giles's LTD benefits expired, he filed with GE in July 1997 a written request for accommodation under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*.

---

[1] As a Class A Machinist, Giles repaired components of power-generating equipment produced by GE. The position required occasional travel to customer locations and the lifting of objects weighing up to ninety pounds. According to Giles and GE, the position "entailed a lot of crawling around into steam turbines" and represented "very physical and heavy work."

[2] The FCE results indicated that Giles frequently could lift twenty to twenty-five pounds and occasionally fifty pounds. Coligado interpreted these results as indicating that Giles could not "safely go back to his regular duty work."

[3] Giles testified that Milani's conclusion regarding his inability to return to work was based on an erroneous job description GE had given to Milani. According to Giles, GE furnished to Milani the job description for a welder, which required, *inter alia*, lifting equipment that weighed over sixty-seven pounds, and lifting parts that weighed up to one hundred pounds to a height of forty inches.

Giles submitted to a third FCE, which qualified him to work only at "medium duty" positions. Failing to secure an unqualified release to work, he applied for Social Security Disability Insurance ("SSDI") in September 1997. The Social Security Administration rejected the application, however, finding that "[his] condition does not prevent [him] from performing [his] previous job as a machinist as it is generally performed."

## II.

Giles sued in November 1997, asserting claims for discrimination under the ADA and the Texas Commission on Human Rights Act ("TCHRA"), TEX. LAB. CODE § 21.001 *et seq*. He followed with an amended complaint, adding a claim for retaliation under the ADA, a claim for retaliation under TEX. LAB. CODE Ann. § 451.001,[4] and state tort claims. The court granted GE's motion for summary judgment on the state tort and retaliation claims and reserved judgment on GE's contention that Giles's SSDI and LTD benefit applications estopped him from asserting that he was a qualified individual for purposes of the ADA. The court considered the impact of *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795 (1999), then denied summary judgment on the estoppel issue, ruling that Giles had sufficiently explained the discrepancies between his assertions on the applications and his contention that he was a qualified individual. *See Giles v. Gen. Elec. Co.*, Civ. Ac. No. 3-97-CV-2774-H, 1999 U.S. Dist. LEXIS 9369 (N.D. Tex. June 9, 1999).

GE moved for j.m.l. on several issues after

the close of Giles's case in chief. First, GE argued that Giles had failed to prove that he was a qualified individual under the ADA and that he was judicially estopped from claiming qualified individual status. Second, GE asserted that Giles had failed to prove the elements of a retaliation claim under the ADA. The court denied the motion with respect to Giles's status as a qualified individual[5] and granted it with respect to the retaliation claim.

The jury made the following findings via special verdict: (1) Giles is a qualified individual with a disability; (2) his disability was a motivating factor in GE's refusal to rehire him; (3) the reasonable accommodation requested by Giles would not impose an undue burden on GE; (4) GE failed to make a good faith effort reasonably to accommodate Giles's disability; (5) Giles is entitled to $400,000 in compensatory damages; (6) GE violated Giles's rights under the ADA with malice or reckless indifference; and (7) Giles is entitled to $800,000 in punitive damages. Citing 42 U.S.C. § 1981a(3)(D), the court limited the award to $300,000,[6] denied Giles's motion for back pay, awarded front pay of $141,110, and granted Giles attorneys' fees of $150,837.

GE filed a post-judgment motion for j.m.l. under FED. R. CIV. P. 50(a), contending that

---

[4] The amended complaint did not cite the relevant Texas statute but merely referenced "Federal and State anti-retaliation laws."

[5] The court stated that it was "going to deny the motion [with respect to Giles's status as a qualified individual] . . . and we'll see how we do on that."

[6] The district court characterized the limited award wholly as compensatory damages, neglecting any punitive award, because the jury's compensatory award alone exceeded the statutory cap. We reject this characterization for the purpose of evaluating whether Giles's injuries supported the compensatory award. *See infra* part IV.A.

(1) Giles's statements on his SSDI and benefit applications estop him from asserting his status as a "qualified individual with a disability" under the ADA; (2) Giles is not a qualified individual with a disability, because he could not have performed his job even with reasonable accommodation; (3) Giles is not disabled for purposes of the ADA, because he was not restricted from a broad class of jobs; (4) GE does not regard Giles as disabled;[7] (5) GE has a policy of not allowing restricted individuals to return to work and could not be required to act contrary to that policy;[8] (6) Giles is not entitled to an award of front pay; and (7) the attorneys' fee award is excessive. The court denied the motion in all respects.

GE appeals the denial of the rule 50 motion, the magnitude of the damage award, and the order awarding attorneys' fees. Giles cross-appeals the refusal to award back pay, the limitation of the compensatory and punitive awards, and the order setting off Giles's disability benefits against his award.

### III.
We turn first to GE's arguments. When reviewing the denial of j.m.l., we "consider all of the evidence . . . in the light and with all reasonable inferences" in favor of the party opposing the motion. *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969) (en banc), *overruled on other grounds by Gatreaux v.*

*Scurlock Marine, Inc.*, 107 F.3d 331 (5th Cir. 1997) (en banc).

If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motion[] is proper. On the other hand, if there is substantial evidence opposed to the motion[], that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion[] should be denied, and the case submitted to the jury.

*Id. Accord Piotrowski v. City of Houston*, 237 F.3d 567, 576 n.9 (5th Cir. 2001).

The court denied GE's motion for j.m.l. made at the close of Giles's case. Under rule 50(b), if a party moves for j.m.l. at the close of all the evidence, it may renew its motion after judgment. The right to renew the motion post-judgment can be waived, however: "[B]y introducing its own evidence after the plaintiff's case in chief, and by failing to renew the motion for [j.m.l.], the defense waive[s] its motion for judgment after the verdict." *Tamez v. City of San Marcos*, 118 F.3d 1085, 1089 (5th Cir. 1997).[9] Nonetheless, we "ha[ve] been willing to excuse certain 'de minimis' departures from technical compliance with Rule 50(b)," *McCann*, 984 F.2d at 671, if the purposes of the rule have been met;[10] thus, we

---

[7] We need not address this argument, because the verdict is sufficiently supported by the finding that Giles in fact was disabled for purposes of the ADA. *See infra* part III.B.

[8] Although, in its motion for j.m.l., GE argued that its policy preempts liability under the ADA, it does not pursue that issue on appeal.

---

[9] *See* rule 50(b)*; McCann v. Tex. City Refining, Inc.*, 984 F.2d 667, 673 (5th Cir. 1993).

[10] Rule 50(b) serves two purposes:

(continued...)

generally have excused violations of rule 50(b) only where

> the trial court had reserved a ruling on an earlier motion for directed verdict (made at the close of the plaintiff's evidence); the defendant called no more than two witnesses before closing; only a few minutes elapsed between the motion for directed verdict and the conclusion of all the evidence; and the plaintiff introduced no rebuttal evidence.

*Id.*[11]

If a defendant has waived its right to move for j.m.l. after judgment, we review merely for plain error and reverse only if the judgment works a "manifest miscarriage of justice." *McCann*, 984 F.2d at 673 (quoting *Coughlin v. Capitol Cement Co.*, 571 F.2d 290, 297 (5th

---

[10](...continued)
to enable the trial court to re-examine the question of evidentiary insufficiency as a matter of law if the jury returns a verdict contrary to the movant, and to alert the opposing party to the insufficiency before the case is submitted to the jury, thereby affording it an opportunity to cure any defects in proof should the motion have merit.

*Bohrer v. Hanes Corp.*, 715 F.2d 213, 216 (5th Cir. 1983).

[11] *But see Tamez*, 118 F.3d at 1091 (upholding j.m.l. despite fact that defendant's case in chief included five witnesses and lasted over five hours, because the court had discussed the j.m.l. extensively with the parties and expressly had reserved ruling on the motion at the close of plaintiff's case, so plaintiff was not unfairly surprised).

Cir. 1978)). GE failed to comply with rule 50(b) in moving for j.m.l after judgment. Because the post-judgment motion for j.m.l. argued several issues, we analyze each separately to determine whether GE's shortcoming can be considered *de minimis*.

### A.
#### 1.

The first issue GE raised in its post-judgment motion for j.m.l. is whether the statements on Giles's SSDI and LTD applications operate judicially to estop him being a claimant under the ADA. We conclude that, with respect to this issue, GE's failure to comply with the strictures of rule 50(b) are excusable.

First, the court arguably reserved ruling on that issue when it was raised at the close of Giles's case. Although the court denied the motion, it added, "we'll see how we do on that," indicating a willingness to revisit the issue at the close of all the evidence. Second, GE's only witness, Bob Scaggs, had first been called by Giles. Importantly, his testimony was unrelated to the issue of Giles's SSDI and LTD applications; furthermore, GE contends⸺and Giles does not dispute⸺that Scaggs testified for only an hour.[12] Third, as in the cases cited in *McCann*, the plaintiff here presented no rebuttal case.

Most importantly, allowing GE to seek j.m.l. on the estoppel issue does not thwart the purposes of rule 50(b). The issue of estoppel was well-litigated. Both parties briefed it, and the court tendered a ruling before trial. In

---

[12] Although Giles does not dispute GE's assertion that Scaggs testified for only an hour, he notes that Scaggs's direct testimony comprises fifty-three pages of transcript.

5

addition, in cross-examination and redirect testimony, Giles discussed his SSDI and LTD applications. After moving for j.m.l. at the close of Giles's case, GE did not address the issue in its own case in chief, and Giles presented no rebuttal evidence. Thus, the issue had developed no further by the close of the evidence than it had when GE first moved for j.m.l. Therefore, Giles could not have been unfairly surprised by the motion for j.m.l. on this issue after judgment. We thus review the issue of estoppel under the *Boeing* standard.

2.

To present a *prima facie* case of discrimination under the ADA, Giles must prove that "[he] is a qualified individual with a disability and that the negative employment action occurred because of the disability." *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1119 (5th Cir. 1998); *see* 42 U.S.C. § 12112(a). A "qualified individual with a disability" is defined by the ADA as someone who has a disability, but who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

GE contends that Giles failed sufficiently to explain the apparent inconsistencies between the statements on his benefit applications and his asserted status as a qualified individual to enable a reasonable juror to conclude that he could perform the essential functions of his job, even with reasonable accommodation. According to GE, Giles therefore is estopped from claiming he is able to work with reasonable accommodation, by virtue of the fact that his applications for SSDI and LTD benefits asserted that he was completely disabled.

[A] plaintiff's sworn assertion in an application for disability benefits that she is, for example, "unable to work" will appear to negate an essential element of her ADA caseSSat least if she does not offer a sufficient explanation. For that reason, we hold that an ADA plaintiff cannot simply ignore the apparent contradiction that arises out of the earlier SSDI total disability claim. Rather, she must proffer a sufficient explanation.

. . .

. . . When faced with a plaintiff's previous sworn statement asserting "total disability" or the like, [a] court should require an explanation of any apparent inconsistency with the necessary elements of an ADA claim. To defeat summary judgment, that explanation must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good faith belief in, the earlier statement, the plaintiff could nonetheless "perform the essential functions" of her job, with or without "reasonable accommodation."

*Cleveland*, 526 U.S. at 806-07. Under *Cleveland*, unless Giles properly explained the discrepancy between his earlier sworn assertions in his SSDI application, he failed to demonstrate a material issue of fact with respect to his status as a qualified individual, and the district court should have granted summary judgment or j.m.l. in favor of GE on that issue.

As an initial matter, the assertions in Giles's SSDI application do not operate judicially to

estop him from asserting qualified individual status only because he failed to obtain benefits under SSDI. Without an award of SSDI benefits, the inconsistency between Giles's prior statements and his assertions in this litigation does not give rise to judicial estoppel:

> [I]f an individual has merely applied for, but has not been awarded, SSDI benefits, any inconsistency in the theory of the claims is of the sort normally tolerated by our legal system. Our ordinary rules recognize that a person may not be sure in advance upon which legal theory she will succeed, and so permit parties to "set forth two or more statements of a claim or defense alternately or hypothetically," and to "state as many separate claims or defenses as the party has regardless of consistency."

*Id.* at 805. The doctrine of judicial estoppel therefore is inappropriate in this case.

Even without the operation of judicial estoppel, however, the statements on Giles's SSDI application properly could provide the basis for summary judgment if they undermine the factual assertions necessary to his ADA claim.[13] Giles's SSDI application asserted that

he has "recurrent disk herniation, resulting with [sic] leg pain & numbness," "inability to walk more than 1½ blocks," and a "perm[anent] [weight] restriction." The application also stated that Giles has "[c]hronic pain" and that he "can't walk or stand long," although he contends that he did not make those assertionsSSinstead, he claims, the consultant hired by GE inserted them after he had completed the form.

Before trial, the court requested briefs on the issue, then ruled that, because "Giles asserts he can perform the job with reasonable accommodation, and none of the disability programs he applied for account for reasonable accommodations, . . . Plaintiff has offered a sufficient explanation to [survive summary judgment]." *Giles*, 1999 U.S. Dist. LEXIS 9369, at *3. Similarly, Giles testified that none of the benefit applications at issue anticipated reasonable accommodation and that he felt he could perform the job with such accommodation. Giles therefore sufficiently explained the assertions on his SSDI application to allow a reasonable juror to conclude that, notwithstanding his prior representations, he is a qualified individual

---

[13] *See Albertson v. T.J. Stevenson & Co.*, 749 F.2d 223, 228 (5th Cir. 1984) ("[A] nonmovant cannot defeat a motion for summary judgment by submitting an affidavit which directly contradicts, without explanation, his previous testimony."); *see also Feldman v. Am. Mem'l Life Ins. Co.*, 196 F.3d 783, 791-92 (7th Cir. 1999) ("Judicial estoppel of an ADA claim, however, is distinguishable from summary judgment against the plaintiff when factual assertions essential to the claim are (continued...)

[13](...continued)
undermined by the plaintiff's previous sworn statements."). Although *Cleveland* dealt with the interplay between an ADA plaintiff's assertions at trial and her earlier SSDI application, the Court limited itself to the question of judicial estoppel; with respect to "factual contradictions," the Court "[did] not necessarily endorse [existing] cases, but [left] the law as we found it." *Cleveland*, 526 U.S. at 807. *Cleveland* is instructive, however, in that it borrowed from prior "factual contradiction" cases, including *Albertson*, the requirement that a plaintiff explain an apparent contradiction.

under the ADA.[14]

This case is more similar to *Cleveland* and *Parker* than to *Reed* or *Feldman*. The plaintiff's application in *Reed* described specific symptoms that, if accepted as true, would render her unable to obtain a government license necessary for the performance of her old position. The court in *Reed*, 218 F.3d at 480, ruled that such assertions could not be cured merely by testifying that the assertions did not account for reasonable accommodation. In *Feldman*, the plaintiff failed to provide any explanation for the factual inconsistencies.[15]

In contrast, Giles's SSDI application is similar to those in *Cleveland* and *Parker*, in that it contains no specific assertions resisting his explanation that he could perform his job with reasonable accommodation;[16] moreover, like the plaintiffs in *Cleveland* and *Parker*, he provided such an explanation. While Giles conceded at trial that he suffers pain and labors under a permanent lifting restrictionSSthe two primary assertions in his applicationSShe contends that a reasonable accommodation would enable him to work at his old position, despite those impairments. He therefore sufficiently explained any factual inconsistencies to survive either summary judgment or j.m.l.

---

[14] *Compare Cleveland*, 526 U.S. at 807 (reasoning that the facts that the assertions on plaintiff's SSDI application "were made in a forum which does not consider the effect that reasonable workplace accommodations would have on the ability to work" and that the injury apparently improved between the time she filed the SSDI application and the time she asserted her status as a qualified individual under the ADA, provided sufficient explanation to survive summary judgment) *and Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 334 (2d Cir. 2000) (opining that statement on SSDI application that plaintiff was "still disabled does not dictate the factual conclusion that he was incapable of returning on a part-time basis or with other accommodation," and plaintiff's explanation to that effect precluded summary judgment), *with Reed v. Petroleum Helicopters, Inc.*, 218 F.3d 477, 480 (5th Cir. 2000) (reasoning that although general statement of total disability may not have been incompatible with qualified individual status, pilot's specific assertions on SSDI application that "she could not sit for extended periods of time and that her back problems made her 'totally unpredictable' were properly considered in determining that she could not fly a helicopter or obtain a valid airmen's certificate," and bare assertions that plaintiff spoke little English and that SSDI application failed to anticipate reasonable accommodation were insufficient to survive summary judgment) *and Feldman*, 196 F.3d at 791-92 (concluding that plaintiff's utter failure to explain why sworn statement that she was "completely and totally disabled" on SSDI application was not inconsistent with her asserted status as a qualified individual rendered summary judgment appropriate). Because Giles's explanations encompass both his SSDI application and his other benefit applications, we do not reach the issue of whether any unexplained inconsistencies between the *unsworn* statements in those applications and his assertions in this litigation might properly form the basis for summary judgment on this issue.

[15] *See Feldman*, 196 F.3d at 792 ("Unlike the plaintiff in *Cleveland*, Feldman failed to offer any explanation for the contradiction between her SSDI and ADA statements.")

[16] The one assertion on Giles's SSDI application that might preclude a jury from finding that he could perform his prior job with reasonable accommodation is the statement that he has chronic pain and cannot walk or stand long. A reasonable jury, however, could believe Giles's contention that he did not make those assertions.

8

### B.

GE argues that, apart from the issues of estoppel and factual inconsistency, the district court should have found as a matter of law that Giles could not have performed his job even with reasonable accommodation, negating Giles's status as a "qualified individual" under the ADA. With respect to this issue, GE's rule 50(b) violations cannot be considered *de minimis*.

Although GE called only one witness as part of its case in chief, that witness testified extensively regarding the nature of the Class A Machinist position, whether a person with Giles's disabilities would be able to perform the duties required, and whether any accommodation would be feasible. GE relies heavily on the testimony of that witness in its post-judgment motion for j.m.l. and on appeal. In light of the close nexus between the issue on which GE sought j.m.l. and the extensive testimony of its lone witness, to entertain GE's post-judgment motion on this issue despite GE's failure to comply with rule 50(b) would unfairly surprise Giles and thereby would thwart one of the purposes of rule 50(b). *See Bohrer v. Hanes Corp.*, 715 F.2d 213, 216 (5th Cir. 1983). Consequently, we cannot excuse GE's failure to follow the procedures outlined by the rule, so GE waived its motion for j.m.l. with respect to this issue.

Thus, we review only for plain error the verdict with respect to whether Giles is a qualified individual under the ADA. Under that standard, "our inquiry is limited to whether there was any evidence to support the jury's verdict, irrespective of its sufficiency, or whether plain error was committed which, if not noticed, would result in a manifest miscarriage of justice." *Coughlin*, 571 F.2d at 297 (internal quotation marks omitted).

Under the ADA, "'qualified individual with a disability' means an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). In determining what constitutes the essential functions of a position, "consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." *Id.*

GE contends that Giles cannot bend, climb, or lift to the degree required by the Machinist Class A position, and it introduced testimony indicating that those skills are essential to the position. Nonetheless, Giles produced a published list of "Job Classifications and Descriptions" from GE's Dallas Service Center that included a description of the Machinist Class A position:

> Performs miscellaneous operations involving broad machine shop experience. Operates all types of machine tools, involving close tolerance work, intricate setups and development. Dismantles, assembles, diagnoses and corrects mechanical trouble on electrical and mechanical equipment such as turbines, motors, generators, transformers, etc. Machines or builds parts from samples or drawings. Performs related duties as assigned. May direct others.

Though the description "does not purport to be all-inclusive or exhaustive of the actual requirements of [the] job," it nowhere indicates that climbing, bending, or lifting is

9

essential. The description may not be the best—or even sufficient—evidence of the essential requirements of the Machinist Class A position to survive under a more stringent standard of review, but it does provide, under § 12111(8), some evidence supporting the verdict.

Furthermore, Giles introduced evidence that Milani's final determination finding him unable to return to work as a Class A Machinist—a determination that apparently influenced GE's decision not to rehire Giles—was based on an incorrect job description provided to Milani by GE. This discrepancy ameliorates GE's assertion that medical experts determined that Giles could not perform the essential elements of the Class A Machinist position. Finally, the SSA's determination that Giles's disability "does not prevent [him] from performing [his] previous job as machinist as it is generally performed" is additional evidence supporting the verdict. We cannot conclude that there was no evidence produced to support the verdict; the jury was not plainly erroneous in finding that Giles was a qualified individual under the ADA.

### C.

In addition to arguing that Giles is not a "qualified individual," GE contends that he failed to establish another element of his *prima facie* case under the ADA; namely, that he possessed a disability as defined by that statute. In denying GE's post-judgment motion on the issue, the district court noted—and GE does not dispute—that, before filing its post-judgment motion, GE never raised the issue of whether Giles was disabled and, in fact, previously had conceded the

issue.[17] By failing to raise the issue at any time before its post-judgment motion, GE waived it, so we refuse to consider it now.[18]

### IV.
### A.

The jury awarded $400,000 as compensatory damages and $800,000 as punitive damages pursuant to 42 U.S.C. § 1981a, which authorizes compensatory and punitive damages for discrimination under the ADA.[19] The court limited the damages to $300,000 under the limitation provisions of 42 U.S.C. § 1981a(b)(3) and characterized the entire award, so limited, as compensatory.[20] GE argues that the award is unsupported by

---

[17] In its April 1999 summary judgment order, the court noted that "Defendant does not dispute that Plaintiff, who injured his back while working for the Defendant in Mexico and has undergone back surgery and rehabilitation due to this injury, is in fact disabled for purposes of the ADA." Moreover, the joint pretrial order fails to mention, either as a defense or as a contested issue of law, Giles's alleged lack of disability for purposes of the ADA.

[18] See Portis v. First Nat'l Bank, 34 F.3d 325, 331-32 (5th Cir. 1994). (holding that an issue not raised in the district court will not be reviewed on appeal, and determining that "[a] party has presented an issue in the trial court if that party has raised it in either the pleadings or the pretrial order, or if the parties have tried the issue by consent.").

[19] Tracking the language of § 1981a(b)(3), the charge defined compensatory damages to include "emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses."

[20] Giles contends that the court improperly applied the statutory cap. We consider that in part V.A, *infra*.

10

competent evidence of actual injury.

The capped amount for a damage award under §1981a is $300,000. When deciding whether a jury award is excessive, we consider the amount of the award after application of the statutory cap, not the amount given by the jury. *See Vadie v. Miss. State Univ.*, 218 F.3d 365, 375-76 (5th Cir. 2000), *cert. denied*, 121 S. Ct. 859 (2001), *and cert. denied*, 2001 U.S. LEXIS 1197 (U.S. Feb. 20, 2001) (No. 00-1007).

In limiting Giles' damages to $300,000, the district court characterized those damages as solely compensatory. Without passing on whether it is appropriate in every case to characterize limited damages as purely compensatory,[21] we note that the lack of evidence of malice or reckless indifference on the part of GE justifies that delineation here.[22] We thus consider whether Giles produced sufficient evidence to support a $300,000 compensatory judgment.

We review with deference damage awards based on intangible harm, because "the harm is subjective and evaluating it depends considerably on the demeanor of witnesses."[23] Nonetheless, to merit any award greater than nominal damages, emotional distress damages must "be supported by competent evidence concerning the injury."[24]

There are two requirements to prove emotional distress, the first of which is specificity with respect to the alleged injury: "[T]here must be a specific discernable injury to the claimant's emotional state, proven with evidence regarding the nature and extent of the harm . . . . [H]urt feelings, anger and frustration are part of life . . . and [are] not the types of harm that could support a mental anguish award." *Id.* Damages for emotional distress may be appropriate, however, where "the plaintiff suffers sleeplessness, anxiety, stress, marital problems, and humiliation." *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998).

Second, we require more than vague allegations to establish existence of the injury. Because "'emotional distress [is] fraught with vagueness and speculation, [and] is easily susceptible to fictitious and trivial claims,' we must 'scrupulously analyze an award of compensatory damages for a claim of emotional distress predicated exclusively on the plaintiff's testimony.'" *Brady*, 145 F.3d at

---

[21] *See Quint v. A.E. Staley Mfg. Co.*, 172 F.3d 1, 13-14 & n.9 (1st Cir. 1999), *petition for cert. filed* (June 21, 1999) (No. 98-9984) (refusing, in the face of substantial evidence supporting punitive damages, to accept the district court's characterization of the limited award as purely compensatory because "by its terms . . . section 1981a(b)(3) neither contemplates nor requires such a characterization.").

[22] A punitive award is justified only if the defendant acted "with malice or with reckless indifference to the federally protected rights" of the plaintiff. 42 U.S.C. § 1981a(b)(1).

[23] *Patterson v. P.H.P. Healthcare Corp.*, 90 F.3d 927, 937-38 (5th Cir. 1996) (quoting 1 HENRY H. PERRITT, JR., CIVIL RIGHTS IN THE WORKPLACE § 4.6, at 245 (2d ed. 1995)).

[24] *Brady v. Fort Bend County*, 145 F.3d 691, 718 (5th Cir. 1998) (quoting *Carey v. Piphus*, 435 U.S. 247, 264 n.20 (1978)). We use "emotional distress" to refer to Giles's emotional pain and suffering, mental anguish, and loss of enjoyment of life, to the extent that those injuries formed the basis for the compensatory award.

719. (quoting *Price v. City of Charlotte*, 93 F.3d 1241, 1250, 1251 (4th Cir. 1996)). Importantly, however, "we do not now hold, nor have we ever held, that a plaintiff may never prove mental anguish damages with his own testimony alone. In certain cases a plaintiff's testimony alone may be sufficient proof of mental damages." *Id.* at 720.[25]

Giles relies primarily on his own testimony to support his contention of emotional distress, although he also cites the testimony of a co-worker, Mike Joyner. Giles testified that he has had trouble sleeping, suffered headaches and marital difficulties, and lost the prestige and social connections associated with his position at GE and his service as treasurer of the local union. Joyner testified that Giles appeared "despondent, depressed, down and absolutely utterly discouraged about not being able to come back to work." This testimony is specific enough to allow a jury to award compensatory damages.

We cannot say, however, that Giles is entitled to the full $300,000. "There is a strong presumption in favor of affirming a jury award of damages. The damage award may be overturned only upon a clear showing of excessiveness . . . . However, when this court is left with the perception that the verdict is clearly excessive, deference must be abandoned." *Eiland v. Westinghouse Elec. Corp.*, 58 F.3d 176, 183 (5th Cir. 1995) (citation omitted).

In such a case, we grant a remittitur, or if the plaintiff chooses not to accept the remitted award, a new trial on the issue of damages alone. *See id.* To determine the size of the remittitur, we follow the "maximum recovery rule," reducing the damages to the maximum amount a reasonable jury could have awarded. *See Dixon v. Int'l Harvester Co.*, 754 F.2d 573, 590 (5th Cir. 1985). "Of course, our reassessment of damages cannot be supported entirely by rational analysis, but involves an inherently subjective component." *Eiland*, 58 F.3d at 183.

The symptoms of which Giles complains do not support an award of $300,000. In *Forsyth v. City of Dallas*, 91 F.3d 769, 774 (5th Cir. 1996), we concluded that a jury reasonably had awarded $100,000 for emotional distress symptoms quite similar to Giles's.[26] In our view, that amount properly would compensate Giles for his emotional distress. To avoid substituting our judgment for that of the jury, however, we augment that amount by fifty percent to reach a maximum recovery. *See Dixon*, 754 F.2d at 590 (citing *Caldarera v. E. Airlines, Inc.*, 705 F.2d 778, 784-85 (5th Cir. 1983)). We therefore reduce Giles' compensatory award to $150,000, with the option of a new trial if he chooses not to accept the remittitur.

---

[25] *See also Migis*, 135 F.3d at 1047 (noting that an award for emotional distress "does not always require that the plaintiff offer medical evidence or corroborating testimony in addition to her own testimony").

[26] *Forsyth* upheld emotional distress damages of $100,000 to one plaintiff based on her testimony that "she suffered depression, weight loss, intestinal troubles, and marital problems, that she had been sent home from work because of her depression, and that she had to consult a psychologist," and emotional distress damages of $75,000 to a second plaintiff who "testified that he suffered depression, sleeplessness, and marital problems." 91 F.3d at 774.

### B.

The district court awarded front pay of $141,110.[27] GE argues Giles failed to mitigate his damages by seeking further employment and that the court erred in awarding front pay in light of this failure. We review front pay for abuse of discretion. *See Rutherford v. Harris County*, 197 F.3d 173, 188 (5th Cir. 1999).

In exercising that discretion, the district court must consider whether an award of front pay is reasonable under the facts of the case; because front pay is an equitable remedy employed to account for future lost earnings, the award "should reflect earnings in mitigation of damages." *Patterson*, 90 F.3d at 937 n.8. Accordingly, district courts "must consider [a plaintiff's] failure to mitigate . . . damages in determining the extent to which, if at all, front pay is appropriate." *Hansard v. Pepsi-Cola Metro. Bottling Co.,* 865 F.2d 1461, 1470 (5th Cir. 1989).

In support of its argument that Giles failed to mitigate, GE cites primarily the refusal to award back pay, contending that the finding of failure to mitigate damages in that context requires a similar finding with respect to front pay. The court considered that argument, however, and concluded that, notwithstanding Giles's failure to mitigate back pay damages, GE had not met its burden of proving that Giles had failed to mitigate his future damages. The court therefore "decided to exercise its equitable discretion and award Plaintiff front pay in an effort to make him whole."

The court did not abuse its discretion. The only evidence cited by GE to show that Giles failed to mitigate his future damages is the fact that he accepted employment as a park attendant and a finding by the Texas Workers' Compensation Commission that he had "not made a good faith effort to obtain employment equal to [his] ability to work" and suspended his workers' compensation benefit for that reason. Giles challenged the commission's finding and, after a hearing, persuaded that agency that the benefits should not have been suspended because, in fact, he had diligently sought work. Moreover, although Giles is unable to detail specifically how he conducted his job search, he attributes that shortcoming to a lack of adequate record-keeping, not of effort.

Ultimately, this evidence is inconclusive. Though the evidence of Giles's failure to mitigate may have been sufficient to allow the court to deny front pay, it was insufficient to require it to do so.[28]

---

[27] "Front pay is awarded to compensate the plaintiff for lost future wages and benefits." *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 44 (5th Cir. 1992). Reinstatement generally is preferable to an award of front pay, and we customarily require the district court to articulate its reasons for finding reinstatement infeasible and awarding front pay in lieu of reinstatement. *See Weaver v. Amoco Prod. Co.*, 66 F.3d 85, 88-89 (5th Cir. 1995). GE concedes that reinstatement is not feasible.

[28] Perhaps a thornier issue is whether front pay is subject to the statutory cap embodied by § 1981a(b)(3), which limits "compensatory damages," including, *inter alia*, "future pecuniary losses." Although the issue appears undecided in this circuit, the majority of circuits to confront it have concluded that front pay should not be limited by § 1981a(b)(3) because, as an alternative to reinstatement, it is equitable in nature and therefore falls outside the statutory limitation of "compensatory damages." *Compare Pals v. Shepel Buick & GMC Truck, Inc.*, 220 F.3d 495, 499-500 (7th Cir. 2000) (holding front pay exempt from (continued...)

### C.

After a hearing, the court awarded attorneys' fees of $150,837. Pursuant to 42 U.S.C. § 1988(b), courts may award fees to prevailing plaintiffs in civil rights actions. We review an award for abuse of discretion and any factual findings supporting the award for clear error. *See Riley v. City of Jackson*, 99 F.3d 757, 759 (5th Cir. 1996). In exercising that discretion, however, the district court must heed the twelve-factor analysis of *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).[29] *See Cobb v.*

*Miller*, 818 F.2d 1227, 1232 (5th Cir. 1987). "The 'district court's *Johnson* analysis . . . need not be meticulously detailed to survive appellate review', but it must articulate and clearly apply the *Johnson* criteria." *Riley*, 99 F.3d at 760 (quoting *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 331 (5th Cir. 1995)).

GE complains that the court abused its discretion and that the award was excessive, because Giles employed five lawyers, took no depositions, made no court appearances before trial, and argued no novel issues. We disagree. The court considered the *Johnson* factors carefully in determining the appropriate fee award.

Specifically, the court found that Giles's attorneys' lodestar value accurately reflected the complexity and novelty of the case;[30] moreover, the court found that the ability and reputation of Giles's attorneys was accurately

---

[28](...continued)
cap); *EEOC v. W & O, Inc.*, 213 F.3d 600, 618 & n.10 (11th Cir. 2000) (same); *Gotthardt v. Nat'l R.R. Passenger Corp.*, 191 F.3d 1148, 1153-54 (9th Cir. 1999) (same); *Martini v. Fed. Nat'l Mortgage Ass'n*, 178 F.3d 1336, 1348-49 (D.C. Cir. 1999) (same), *cert. denied*, 120 S. Ct. 1155 (2000); *Medlock v. Ortho Biotech, Inc.*, 164 F.3d 545, 556 (10th Cir.) (same), *cert. denied*, 528 U.S. 813 (1999); *Kramer v. Logan County Sch. Dist.*, 157 F.3d 620, 626 (8th Cir. 1998) (same), *with Pollard v. E.I. du Pont de Nemours & Co.*, 213 F.3d 933, 945 (6th Cir. 2000) (reasoning that front pay is compensatory in nature and therefore subject to the cap), *cert. granted*, 121 S. Ct. 756 (2001); *Hudson v. Reno*, 130 F.3d 1193, 1202-03 (6th Cir. 1997) (same). Like the majority of circuits, we regard front pay as an equitable remedy, *see Walther v. Lone Star Gas Co.*, 952 F.2d 119, 127 (5th Cir. 1992). By failing to argue that the limitation applies, however, GE has waived the issue on appeal, so we do not decide it.

[29] As we recently reiterated,

[t]he twelve *Johnson* factors are: (1) the time and labor required, (2) the novelty and difficulty of the issues, (3) the skill required to perform the legal services properly, (4) the preclusion of other employment, (5) the
(continued...)

---

[29](...continued)
customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Strong v. BellSouth Telecomms.*, Inc., 137 F.3d 844, 850 n.4 (5th Cir. 1998) (citing *Johnson*, 488 F.2d at 717-19).

[30] The lodestar value is the number of hours worked by Giles's attorneys multiplied by their respective rates. It serves as the base value for any fee award, subject to enhancement or reduction based on the *Johnson* factors. *See Riley*, 99 F.3d at 760.

reflected in their customary billing rates and that the result obtainedSSa successful judgment of over $1,000,000, reduced to over $400,000 by the statutory capSSjustified the lodestar value.[31] Finally, finding some of Giles's attorneys' fees unreasonable, the court reduced their hours and rates.

Although GE complains about the number of attorneys employed by Giles, it does not take issue with any of the court's *Johnson* analysis. We cannot conclude that the court abused its discretion in determining the fee award.

V.

A.

In his cross-appeal, Giles contends that the statutory limitation of § 1981a(b)(3) does not apply to the damages in this case, arguing that the limitation is an affirmative defense; because GE failed to plead that defense, it waived its right to argue for limitation of the judgment after trial. Giles can marshal no authority directly supporting his assertion, so he argues by analogy from *Ingraham v. United States*, 808 F.2d 1075 (5th Cir. 1987), in which we considered the statutory limitation of the Medical Liability and Insurance Improvement Act of Texas, TEX. REV. CIV. STAT. ANN. art. 4590i. There, we analyzed several factors in determining that the statutory limitation functioned as an affirmative defense that must be pleaded under FED. R. CIV. P. 8(c).

We need not reach the issue of whether the statutory cap of § 1981a(b)(3) must be pleaded as an affirmative defense under *Ingraham*,[32] because even assuming the cap is an affirmative defense, GE's failure to plead the cap did not waive the defense in this case. Although failure to raise an affirmative defense under rule 8(c) in a party's first responsive pleading "generally results in a waiver. . . . , [w]here the matter is raised in the trial court in a manner that does not result in unfair surprise . . . technical failure to comply precisely with Rule 8(c) is not fatal." *Allied Chem. Corp. v. Mackay*, 695 F.2d 854, 855-56 (5th Cir. 1983). Thus, a defendant does not waive an affirmative defense if he "raised the issue at a pragmatically sufficient time, and [the plaintiff] was not prejudiced in its ability to respond." *Id.* at 856.

---

[31] The district court correctly focused on the weightier factors in the *Johnson* analysis, with emphasis on the most important factor, the result obtained. *See Migis*, 135 F.3d at 1047 (noting that, in conducting a *Johnson* analysis, a "court should give special heed to the time and labor involved, the customary fee, the amount involved and the result obtained, and the experience, reputation and ability of counsel," and emphasizing that "[t]he Supreme Court has twice made clear that 'the most critical factor' in determining the reasonableness of a fee award in a civil rights suit 'is the degree of success obtained'" (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)).

[32] The only court to have addressed the issue of whether the limitation provision of § 1981a(b)(3) functions as an affirmative defense reasoned persuasively that it does not; instead, the court opined, the § 1981a cap is an integral part of the statutory scheme under which the plaintiff sought damagesSSthus, a plaintiff cannot have suffered unfair surprise in the invocation of the cap, so the cap should not be waivable as a defense. *See Oliver v. Cole Gift Ctrs., Inc.*, 85 F. Supp. 2d 109, 111-12 (D. Conn. 2000) (distinguishing *Ingraham* as one of a number of cases in which "[t]he courts . . . held that the caps were affirmative defenses in order to prevent unfair surprise because the caps were not evident on the face of the statutory schemes under which the plaintiffs had brought their claims.")

GE asserted the defense as a contested issue of law in the joint pretrial order, and the court held a hearing on the issue before trial. Under these circumstances, Giles could not have been unfairly surprised by the statutory limitation. The court therefore properly allowed GE to use the cap as a defense despite GE's failure to follow the strictures of rule 8(c).

### B.

Giles contends that the court should have "reallocated" into his claim under the Texas Human Rights Act those damages in excess of the federal statutory cap. We disagree.

The sole case relied on by Giles, *Martini v. Fed. Nat'l Mortgage Ass'n*, 178 F.3d 1336 (D.C. Cir. 1999), *cert. dismissed*, 528 U.S. 1147 (2000), involved coextensive claims under both federal law and a District of Columbia law. The federal claim was subject to the limitations of § 1981a(b)(3), but the analogous claim under District of Columbia law carried no such limitation. The jury had received no instruction on apportioning the damages between the two claims, and the court of appeals held that the district court had improperly limited the damages, because there was no basis for determining how the jury had apportioned the award. *See id.* at 1347-50. Further, the court of appeals reasoned, "[w]ere we not to treat damages under federal and local law as fungible where the standards of liability are the same, we would effectively limit the local jurisdiction's prerogative to provide greater remedies for employment discrimination than those Congress has afforded under Title VII." *Id.* at 1350.

This case is distinct from *Martini* in that the state law undergirding Giles's claim contains a damages limitation provision identical to that in § 1981a(b)(3). *See* TEX. LAB. CODE ANN. § 21.2585. The similarity is unsurprising, given the Texas Legislature's goal of "provid[ing] for the execution of the policies embodied in Title I of the Americans with Disabilities Act of 1990 and its subsequent amendments." *Id.* § 21.001(3). In the face of the similarities in the two statutory caps and the legislature's practice of replicating the federal scheme, the legislative policy would be better served by viewing the two caps as coextensive, not cumulative. The court did not err in limiting Giles's compensatory damage award to $300,000 pursuant to § 1981a(b)(3).

### C.

Giles argues that the court erred in denying his request for back pay. Like front pay, back pay is an equitable remedy, the award of which we review for abuse of discretion.[33] Because it is an equitable remedy, back pay is subject to a duty to mitigate damages. *See Deffenbaugh-Williams*, 156 F.3d at 590.

The court surveyed the evidence of Giles's attempts to mitigate his damages and concluded that he had failed to mitigate his damages with respect to the back pay award, based in particular on the fact that he could document very little of his asserted job search. Although Giles produced sufficient evidence to allow front pay, he failed to produce enough evidence to compel the court to award back

---

[33] *See Deffenbaugh-Williams v. Wal-Mart Stores, Inc.*, 156 F.3d 581, 590 (5th Cir. 1998), *vacated for rehearing en banc*, 169 F.3d 215 (5th Cir.), *reinstated in part*, 182 F.3d 333 (5th Cir. 1999) (per curiam) (en banc); *Hadley v. VAM P.T.S.*, 44 F.3d 372, 376 (5th Cir. 1995).

pay.[34] The district court's decision to deny back pay is therefore within its sound discretion.

### D.

The court granted summary judgment for GE on Giles's workers' compensation retaliation claim. Giles contends the court should have allowed the claim to proceed to trial. We review a summary judgment *de novo*, applying the same standard as did the district court, so we view all disputed facts in the light most favorable to the non-moving party. *See Waymire v. Harris County*, 86 F.3d 424, 427 (5th Cir. 1996).

To survive a motion for summary judgment, the non-moving party must present sufficient evidence to support the elements of its *prima facie* case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 321-23 (1986). "Conclusory allegations unsupported by specific facts . . . will not prevent an award of summary judgment; 'the plaintiff [can]not rest on his allegations . . . to get to a jury without any significant probative evidence tending to support the complaint." *Nat'l Ass'n of Gov. Employees v. City Pub. Serv. Bd.*, 40 F.3d 698, 713 (5th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)) (modifications in original). Instead, "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 524 (internal quotation marks omitted).

Giles contends that the court improperly granted summary judgment on his workers' compensation claim, because GE never moved for summary judgment on that issue. The record reflects, however, that GE did seek summary judgment on "all claims and causes of action asserted by . . . Giles . . . " and argued that "there is no evidence that . . . GE took or refrained from any action based on Giles's workers' compensation claim for benefits." To the extent that Giles's retaliation claim fell outside the language of GE's motion, it did so because, as the district court noted, "no citation was made to the relevant statutory provision in either the Plaintiff's First Amended Complaint . . . or the Plaintiff's Response to Defendant's Motion for Summary Judgment."[35]

The court granted summary judgment on the workers' compensation retaliation claim because Giles failed to produce summary judgment evidence establishing the nexus between the filing of his workers' compensation claim and his termination. Giles apparently concedes that his response failed to "designate specific facts showing that there [was] a genuine issue for trial," as required by *Celotex*, but instead argues that GE's summary judgment motion provided insufficient notice for him properly to respond before summary judgment was grant-

---

[34] Although it may seem anomalous that the district court can view the same evidence and reach opposing conclusionsSSthat front pay is appropriate while back pay is notSSthat court's discretion allows for such conclusions in the interest of equity. Such a result is the functional equivalent of a reduction in both front pay and back pay, another action well within the court's discretion.

[35] Giles's first amended complaint merely alleged that he "was subject to adverse actions as prohibited by anti-retaliation laws because . . . he . . . was injured on the job and filed workers' compensation claims."

ed.

Giles unsuccessfully moved for reconsideration, asserting the same argument before the district court. Because Giles filed his motion for reconsideration within ten days of the original summary judgment order, we treat the motion for reconsideration as a motion to amend the judgment under FED. R. CIV. P. 59(e). *See Trust Co. Bank v. United States Gypsum Co.*, 950 F.2d 1144, 1147 (5th Cir. 1992). We review such a motion for abuse of discretion. *See Midland W. Corp. v. FDIC*, 911 F.2d 1141, 1145 (5th Cir. 1990).

Dealing first with the summary judgment, we agree with the district court that Giles did not carry his burden under *Celotex*. By failing specifically to set forth facts that could present a triable issue, he neglected to support his claim sufficiently to survive summary judgment. To the extent that he asks us to revisit the summary judgment because GE's motion did not provide him with proper notice, we treat that as an appeal of the motion to reconsider, because the court addressed that argument in refusing to reconsider its summary judgment.

Likewise, we find no abuse of discretion in the decision not to amend the summary judgment. Given the imprecision with which Giles framed his retaliation claim in the amended complaint, GE's summary judgment motion sufficiently referenced that claim when asserting that it had taken no action in retaliation to the filing of the compensation claim.

GE cannot be expected to anticipate the basis for Giles's claim. We therefore affirm the summary judgment on the workers' compensation retaliation claim.

E.

In awarding damages, the court offset, from the front pay award, an amount equal to the sum of the LTD and disability pension benefits Giles had already received from GE. Giles argues that this is error, because GE failed to plead the offset as an affirmative defense under rule 8(c). GE concedes that it failed to assert the affirmative defense[36] but argues that this should be excused. As we have said, a court may excuse a violation of rule 8(c) in the absence of prejudice to the other party.

On appeal, Giles alleges no prejudice other than the assertion that his expert was "ambushed" by GE's questioning about benefits at trial. Giles was not unfairly prejudiced by the defense, however, because the parties each addressed the issue before trial.

Giles raised the issue in a motion *in limine* and proceeded to object on the merits to several of GE's trial exhibits before trial. GE filed a brief before trial addressing Giles's objections and indicating its intention to seek an offset: "According to Giles, because these payments fall under the collateral source rule, they cannot be introduced at trial nor can they offset his recovery. . . . [T]he collateral source rule does not apply." Giles's motion *in limine* and GE's pretrial assertion belie his asserted prejudice. The court was well within its discretion to consider GE's affirmative defense of offset, notwithstanding GE's failure properly

---

[36] Our caselaw supports Giles's contention that an offset indeed is an affirmative defense. *See Rosenberg v. Trautwein*, 624 F.2d 666, 670 (5th Cir. 1980) (noting in passing "the general rule that an offset is an affirmative defense that must be pleaded").

to plead the defense.

Giles takes issue with the merits of the decision to offset the recovery. Because the decision to award front pay is within the discretion of the district court, so also we review the decision to offset that award for abuse of discretion. The district court acted well within that discretion.

Giles baldly asserts that the collateral source rule bars setting off the benefits against the front pay award.[37] Giles cites *Davis* for the proposition that "when an employee has bargained for a fringe benefit as additional consideration for employment, compensation received by the employee under that fringe benefit should not be deducted from damages awarded to the employee," 18 F.3d at 1244. Giles fails, however, to explain how that proposition might apply to this case.

Plainly, the benefits used to offset the front pay were not additional, bargained-for compensation but were instead compensation for the injury out of which this case arises. In seeking to apply *Davis*'s language to the facts of this case, Giles misapprehends one of the central tenets of *Davis*: "Properly interpreted . . ., the collateral source rule . . . prevents tortfeasors from paying twice for the same injury—a result that would achieve both over-deterrence and overcompensation. *Id.* at 1244 n.21.

The collateral source rule would do exactly that—SGE is already obligated to pay Giles's disability pension and LTD benefits to compensate for his inability to work in the future. Failure to set those amounts off against his front pay award—which is designed to accomplish the same purpose—would overcompensate Giles. Accordingly, the court acted within its discretion in setting off the benefits from the front pay award.

VI.

In conclusion, the jury's compensatory award is excessive, even as limited by § 1981a-(b)(3). We therefore offer the plaintiff a remittitur of $150,000 in compensatory damages or a new trial on compensatory damages alone. In all other respects, we affirm the judgment.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

---

[37] "The collateral source rule is a substantive rule of law that bars a tortfeasor from reducing the quantum of damages owed to a plaintiff by the amount of recovery the plaintiff receives from other sources of compensation that are independent of (or collateral to) the tortfeasor." *Davis v. Odeco, Inc.*, 18 F.3d 1237, 1243 (5th Cir. 1994)