Nellie JOHNSON, Mona Felts and Mary Cudd, Appellants,

v.

Linette FELTS, Appellee.

No. 14–03–00112–CV.

Court of Appeals of Texas, Houston (14th Dist.).

March 2, 2004.

Rehearing Overruled July 1, 2004.

---

Jeffrey L. Dorrell, Houston, Appellants.

J.C. Loftis and Isaac E. Henderson, Houston, for Appellee.

Panel consists of Chief Justice ADELE HEDGES and Justices ANDERSON and GUZMAN.

## OPINION

ADELE HEDGES, Chief Justice.

Appellants Nellie Johnson, Mona Felts and Mary Cudd appeal from two summary judgments granted by the trial court. The first order, dated September 6, 2001, originally granted summary judgment to appellee Linette Felts as to all claims brought by appellants Johnson, Felts and Cudd. On November 13, 2001, the first order was modified to set aside the summary judgment against appellant Cudd. However, the second order, dated August 13, 2002, again granted summary judgment to appellee on all claims brought by appellant Cudd. We reverse and remand the first order for trial but affirm the second order.

### Background

Appellants Johnson and Felts originally brought suit against appellee and her alleged boyfriend, Stacy Booker, claiming that the defendants had wrongfully brought about the death of appellee's husband, Steven Felts. Neither appellee nor Booker was ever charged in connection with his death. Appellee was designated as a beneficiary of her husband's life insurance proceeds, retirement benefits, and investment accounts.

Appellants sought a declaratory judgment, damages for wrongful death, the imposition of a constructive trust on all assets inherited by appellee, and forfeiture of her interest in the life insurance proceeds.[1] Appellant Cudd intervened in the

---

1. Appellants Johnson and Felts contend that the amended pleading they filed along with appellant Cudd containing their negligence claim was properly before the trial court. We disagree. In absence of the trial court denying leave to file an amended pleading, this Court will only presume the trial court granted leave to file when, *inter alia,* the record fails to show the trial court did not consider

suit as legal guardian for appellee's daughter, Lynnlee Felts, and brought the same three claims plus a negligence claim[2] against the defendants. Connecticut General Life Insurance Company intervened and filed an interpleader action by depositing the proceeds of the life insurance policy held by Steven Felts in the registry of the trial court.

The two interlocutory summary judgments became final for purposes of this appeal by the trial court's November 12, 2002 and December 19, 2002 orders. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 200 (Tex.2001). The former order granted appellants' non-suit of all claims against defendant Booker. The latter sustained the interpleader action brought by Connecticut General Life Insurance Company and dismissed it as a party to the case. Appellants now raise six issues on appeal.

### Issues Presented for Review

In their first four issues, appellants argue that the trial court erred in granting the first summary judgment,[3] which dismissed all claims brought by appellants Johnson and Felts against appellee. They contend: (1) appellee failed to carry her burden of proof required for traditional summary judgment, (2) appellee's no-evidence motion for summary judgment was legally insufficient, (3) appellants carried their burden in response to appellee's no-evidence claim, and (4) the trial court erred in granting more summary judgment relief than was requested

by appellee. In their fifth and sixth issues, appellants argue the trial court erred in granting the second summary judgment, which dismissed all of appellant Cudd's claims against appellee. They contend: (5) appellee's no-evidence motion for summary judgment was legally insufficient, and (6) the trial court erred in granting appellee's second no-evidence motion for summary judgment.

### Waiver

 As an initial matter, appellee contends that appellants did not preserve error as to their second and fifth issues because appellants failed to object to the legal sufficiency of her no-evidence motions for summary judgment in their responses. A respondent may challenge the legal sufficiency of a no-evidence motion for the first time on appeal. *See McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 342 (Tex.1993) (applying the rule to motion for traditional summary judgment); *Cuyler v. Minns*, 60 S.W.3d 209, 213 (Tex.App.-Houston [14th Dist.] 2001, pet. denied) (applying *McConnell* to no-evidence motion); *Crocker v. Paulyne's Nursing Home, Inc.*, 95 S.W.3d 416, 419 (Tex.App.-Dallas 2002, no pet.); *Callaghan Ranch, Ltd. v. Killam*, 53 S.W.3d 1, 3 (Tex.App.-San Antonio 2000, pet. denied). *But see Walton v. City of Midland*, 24 S.W.3d 853, 857–58 (Tex.App.-El Paso 2000, no pet.); *Williams v. Bank One, Texas, N.A.*, 15 S.W.3d 110, 117 (Tex.App.-Waco 1999, no pet.); *Roth v. FFP Operating Partners, L.P.*, 994 S.W.2d 190, 194–95

it. *See Goswami v. Metro. Sav. & Loan Ass'n*, 751 S.W.2d 487, 490 (Tex.1988). In the present case, the record clearly reveals the amended pleading was not considered. Therefore, the amended pleading containing their negligence claim was not properly before the trial court.

**2.** We assume but do not decide that since appellant Cudd's negligence claim was ad-

dressed in appellee's second motion for summary judgment, it was properly before the trial court.

**3.** The trial court did not state the grounds upon which the motion was granted. Appellee's first motion combined both traditional and no-evidence summary judgment claims.

(Tex.App.-Amarillo 1999, pet. denied). Therefore, appellants' failure to object to appellee's motions on legal insufficiency grounds in their responses did not waive their second and fifth issues before this Court.

### Traditional Summary Judgment

In their first issue, appellants argue that traditional summary judgment is inappropriate because appellee failed to carry her burden of proof. To prevail on a traditional motion for summary judgment, a movant must establish that because there is no genuine issue as to any material fact, the movant is therefore entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c). A defendant who either conclusively negates at least one of the essential elements of each of the plaintiff's causes of action or conclusively establishes all elements of an affirmative defense is entitled to summary judgment. *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex.1995). In order to conclusively negate at least one of the requisite elements, the motion must identify or address the cause of action or defense and its elements. *See Black v. Victoria Lloyds Ins. Co.*, 797 S.W.2d 20, 27 (Tex.1990).

In the present case, appellee stated in her first motion for summary judgment that she did not murder her husband and analogized the instant civil causes of action to the crime of murder. She also made a conclusory objection to the wrongful death action and asserted that she was entitled to summary judgment as to all claims made against her. Because appellee failed to identify the elements of the various causes of action brought by appellants and did not address any specific elements thereof, we therefore hold that traditional summary judgment is inappropriate and sustain appellants' first issue.

### The First No–Evidence Motion

In their second issue, appellants argue that appellee's first no-evidence motion is legally insufficient to entitle her to summary judgment. A no-evidence summary judgment motion must state the specific elements as to which there is no evidence. *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 207 (Tex.2002). An appellate court cannot read between the lines, infer or glean from the pleadings or proof any grounds for summary judgment other than those grounds expressly set forth before the trial court in the motion. *McConnell*, 858 S.W.2d at 343.

Again, appellee here failed to identify or address any specific elements of any of appellants' causes of action in her first motion for summary judgment. We therefore hold that appellee's first no-evidence motion for summary judgment is insufficient as a matter of law and sustain appellants' second issue. Because we have determined that the trial court erred in granting the first summary judgment, whether of the traditional or no-evidence variety, we must reverse and remand that order for trial. Accordingly, it is unnecessary to consider appellants' third and fourth issues.

### The Second No–Evidence Motion

In their fifth issue, appellants argue that appellee's second no-evidence motion is legally insufficient to entitle her to summary judgment. In applying the same standards as stated above, we find that appellee's second no-evidence motion is legally sufficient. *See Johnson*, 73 S.W.3d at 207; *McConnell*, 858 S.W.2d at 343. In contrast to her first motion, appellee's second no-evidence motion identifies and addresses specific elements of appellants' causes of action. Appellee contends in her motion that there is no evidence of causation, which is identified as an element com-

mon to all causes brought by appellants. Because she has complied with Rule 166a(i) of the Texas Rules of Civil Procedure and has brought a legally sufficient no-evidence motion for summary judgment, we overrule appellants' fifth issue.

In their sixth issue, appellants argue that the trial court erred in granting appellee's second no-evidence motion for summary judgment. To defeat a no-evidence motion, a respondent is not required to marshal its proof, but only to point out evidence that raises a fact issue on the challenged element(s). *Johnson*, 73 S.W.3d at 207. We consider all evidence in the light most favorable to the party against whom the motion was brought, disregarding all contrary evidence and inferences. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997), *cert. denied*, 523 U.S. 1119, 118 S.Ct. 1799, 140 L.Ed.2d 939 (1998).

Circumstantial evidence may be used to establish any material fact, but it must transcend mere suspicion. *Lozano v. Lozano*, 52 S.W.3d 141, 149 (Tex.2001). The material fact must be reasonably inferred from known circumstances. *Id.* Each piece of circumstantial evidence must be viewed not in isolation, but in light of all known circumstances. *Id.* Based upon these principles, appellant argues that the following evidence presents a fact issue as to whether appellee, either as the primary actor or as an accomplice, caused the death of her husband.[4]

In response to questions from Detective Brad Rollins of the Houston Police Department, appellee denied she was having any marital problems just prior to the death of her husband, Steven Felts. But appellee later admitted that she and her late husband had contemplated divorce proceedings in May 1996. She also admitted that the couple had considered seeing a marriage counselor. The record even reveals that the couple considered whether some "time apart" might help their relationship.

That appellee and her late husband were experiencing marital difficulties just prior to the homicide was further established by other facts. First, the evidence establishes that appellee's husband, upon learning appellee spent time with her friend Portia Bell the weekend prior to his death, locked appellee out of the house the day before he was killed. Second, her husband maintained a separate personal bank account and transferred a large sum of money out of their joint account at Nations Bank and into his separate account at Norwest on the day he was killed. There is evidence that her husband did this specifically because he did not want her to have access to it.

Moreover, despite appellee's denials that she ever took part in any extra-marital affairs, the evidence establishes otherwise. Apparently, Steven Felts was aware that his wife participated in at least two affairs—one with a "Spanish guy" in Rosenberg and one with a "truck driver" in Houston (presumably, Alfred Hinton). Additionally, appellee admitted to having an affair with Clyde Gibbens in 1994, and with Hinton sometime after her husband's death. The record also tends to establish the existence of an affair between appellee and Hinton just prior to her husband's death. In yet another tape recorded conversation, appellee was asked by an unknown male about her "boyfriend," and appellee did not object to the use of that term.

4. We note that while appellee objects to the admissibility of much of the evidence presented below, she failed to obtain a ruling on these objections and therefore waived them before this Court. *See Miga v. Jensen*, 96 S.W.3d 207, 212–13 (Tex.2002).

The evidence also establishes that appellee misled police as to the presence of guns at her home. Appellee initially claimed that she walked in the doorway and saw her husband's body, then looked at the gun cabinet and noticed that most of the guns were gone. When confronted with the fact that one cannot see the guns from the doorway area, appellee recanted and then claimed that she walked the full length of the couch before discovering the guns were missing. She initially claimed that six guns were stolen from the gun cabinet, but then later amended this answer by stating that there were five guns originally in the cabinet, four of which were stolen. Appellee also initially told police that her .38–caliber pistol was located at her father's house in Victoria. But she later claimed that, instead of leaving the pistol there, she had loaned it to Stacy Booker. Finally, appellee concealed the presence of firearms in the attic above the garage from the police.

Appellee's account of the events leading up to her husband's death also contained numerous inconsistencies and instances in which she changed her story. For example, she stated that two weekends prior to the death of her husband, she traveled to Louisiana to go gambling and spent the weekend alone. However, in a recorded conversation, she told a friend that she in fact did not go gambling alone during that time. More importantly, however, her timeline of events changed frequently during the course of the police investigation. Appellee initially told police she went to Wal–Mart around 9:00 p.m., returned home at around 10:00, could not recall what happened between 10:00 and 11:15 p.m., and then went to get hamburgers at 11:15 p.m. Later, she told Detective Rollins she went to Wal–Mart around 8:30 p.m., returned home at 9:30, then left

sometime between 10:00 and 11:00 p.m. to pick up the burgers. During her deposition, she changed her story again, claiming she left for Wal–Mart around 8:30 p.m., returned home, then left to get the burgers at 9:30, and finally returned home at 11:50 p.m. Finally, appellee initially claimed her husband had sent her to Whataburger to pick up hamburgers, but she later changed her story when confronted with autopsy evidence that his stomach had been full at the time of death, having already eaten bologna sandwiches at home. Thus, the numerous inconsistencies in appellee's versions of the events misled the police about the timing and sequence of the events occurring on the night of her husband's death.

 Detective Rollins of the Rosenberg police testified by affidavit that he believes appellee willfully caused the death of her husband.[5]

While the sum total of the voluminous testimony presented by appellant may constitute evidence that some wrongful act had been committed, not one scintilla of causation evidence was ultimately produced—even if we disregard all of appellee's evidentiary objections. *See Lozano*, 52 S.W.3d at 149. A conclusion that appellee caused the death of her husband would be based on nothing but mere possibility, speculation, and surmise. *See Havner*, 953 S.W.2d at 712. The circumstantial evidence is so meager that an inference that appellee caused the death of her husband is "purely a guess." *See Lozano*, 52 S.W.3d at 148. Accordingly, the trial court did not err in granting appellee's second no-evidence motion for summary judgment. We overrule appellants' sixth issue.

---

**5.** An expert's bare opinion testimony, however, is insufficient to support such a finding; rather, the substance of the testimony must be considered. *Havner*, 953 S.W.2d at 711.

707

*Conclusion*

We affirm the trial court's second grant of summary judgment in favor of appellee on all claims brought by appellant Cudd. We reverse and remand the first grant of summary judgment in favor of appellee on all claims brought by appellants Johnson and Felts for further proceedings.