Reversed and Remanded and Opinion filed March 13, 2008








Reversed and
Remanded and Opinion filed
March 13, 2008.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00196-CV

____________

 

ALICE S. GRIMES, Appellant

 

V.

 

RONALD E. REYNOLDS, INDIVIDUALLY
AND BROWN, BROWN & REYNOLDS, P.C., Appellees

 



 

On Appeal from the 113th
District Court

Harris County, Texas

Trial Court Cause No. 2005-27437

 



 

O P I N I O N

This is an appeal from the granting of a summary judgment
in favor of the defendants in a legal malpractice case.  Finding appellees,
Ronald E. Reynolds and Brown, Brown & Reynolds, P.C., failed to meet their
summary judgment burden, we reverse and remand to the trial court for further
proceedings in accordance with this opinion.








Factual and procedural background

As this is a legal malpractice case arising out of
appellees= representation of appellant in a federal lawsuit, our
factual background begins with a review of that underlying lawsuit.

A.      The
Underlying Federal Lawsuit

For much of the time period relevant to the underlying
lawsuit, appellant was employed as a nurse in the cardiac catherization lab (Acath lab@) at The Methodist
Hospital (AMethodist@).  Appellant
consistently received good evaluations of her performance as a cath lab nurse.

According to appellant, beginning in September 1995, she
was subjected to continuing episodes of sexual harassment by Methodist
employees as well as by doctors working in the Methodist cath lab.  The initial
episode of harassment involved a Methodist employee.  Appellant reported the
harassment and the employee was subsequently disciplined.

In 1996 or 1997, some of the doctors who performed
procedures in the Methodist cath lab began to sexually harass appellant.  When
appellant reported the harassment to Methodist management, she was told she Awas a pretty girl
and . . . should  expect these things and just ignore him.@  This harassment
continued into the spring of 2000 despite appellant=s repeated
complaints about the behavior.








In January 2000, fellow Methodist cath lab employees began
to sexually harass appellant.  In one of the incidents, the employee grabbed
appellant=s shoulders from behind and pushed his hips against
appellant=s buttocks.  In the second incident, a Methodist 
employee placed a model of a penis in appellant=s chair. 
Appellant reported the incidents to her supervisor.  Methodist informed
appellant that an investigation had been conducted and the results were Anone of her
business.@ In late August 2000, appellant took a medical leave
of absence from Methodist.  She did not return to work until November 2000. 
Upon her return, appellant met with her supervisors, and she was told the best
way to handle the problem in the cath lab was to transfer appellant out of the
cath lab to a position as a floor nurse.  When appellant rejected the proposed
transfer, she was informed that if she refused to accept the transfer, it would
be considered a voluntary termination.  Appellant was told to leave her
hospital badge when she left the meeting.  Appellant left the meeting and went
home.   Approximately a week later, a Methodist manager contacted appellant and
asked to her come to the hospital for a meeting.  At the meeting, the manager
told appellant Methodist had rethought the situation and had decided not to
terminate her and wanted to attempt to work something out.  About a week after
that conversation, Methodist offered appellant a position in the hospital=s blood bank,
which she accepted even though it was not the position she wanted.

In May 2000, appellant filed a complaint of sexual
discrimination and retaliation with the Equal Employment Opportunity Commission
(AEEOC@) and the Texas
Commission on Human Rights.  In January 2002, the EEOC issued a determination
letter in which it found  the testimonial evidence did not support appellant=s allegation of a
hostile work environment.  However, the EEOC did find the evidence supported
appellant=s allegation that Methodist retaliated against her for
filing her EEOC complaint.  EEOC efforts to resolve the issue through
conciliation failed.

In March 2002, appellant was terminated, ostensibly for
excessive absences.

Following her termination, appellant retained Reynolds and
his firm to handle her claims against Methodist.  On January 15, 2003,
appellees filed suit on appellant=s behalf  against
Methodist in federal court.  Appellant alleged Methodist subjected her to
sexual harassment and retaliation under Title VII of the Civil Rights Act of
1964, as amended, 42 USC ' 2000e et seq., as well as common
law causes of action.[1]








During the course of the litigation, Methodist propounded
eight requests for admission on appellant.  The first request for admission
asked appellant to admit she filed her EEOC complaint too late.  The second
request for admission asked appellant to admit the incidents of sexual
harassment were not severe or pervasive.  The third request for admission asked
appellant to admit she did not report the sexual harassment to Methodist=s management.  The
fourth request for admission asked appellant to admit Methodist took prompt
remedial action in response to appellant=s complaints of
discrimination.  The fifth request for admission asked appellant to admit she
did not timely file her federal lawsuit.  The sixth request for admission asked
appellant to admit that, with respect to her retaliation claim, she did not
sustain an adverse employment action.  The seventh request for admission asked
appellant to admit Methodist=s conduct was not extreme and outrageous. 
The eighth and final request for admission asked appellant to admit she was
terminated for excessive absences.  Reynolds did not file answers to any of the
requests, thus, under federal practice, the requests for admission were deemed
admitted without any formal action by the trial court.  Fed. R. Civ. P. 36(a).








Methodist then filed a motion for summary judgment.  The
primary basis supporting the motion was appellant=s deemed
admissions.  Reynolds never filed a response to the motion for summary
judgment.  The federal court, emphasizing appellant=s deemed
admissions, granted the motion.  In its memorandum opinion, the trial court
stated A[i]n the absence
of a written response to the defendant=s motion for
summary judgment, and the absence of a genuine issue of material fact that
would bar summary judgment, the Court finds that summary judgment is
appropriate.@  Following the entry of the take nothing final
judgment by the trial court, Reynolds did not file a motion for new trial or an
appeal of the final judgment.  In addition, Reynolds did not tell appellant
that he failed to file a response to the motion for summary judgment.  Finally,
Reynolds did not tell appellant the trial court had entered a take nothing
judgment against her until appellant contacted him inquiring as to the status
of her case several months after the summary judgment had been granted.  This
conversation, initiated by appellant, did not occur until long after the
appellate deadlines had passed.

B.      The
Malpractice Lawsuit

Once she learned the fate of her Title VII suit against
Methodist, appellant filed the current malpractice lawsuit against appellees. 
Appellees eventually filed a motion for summary judgment, arguing they were
entitled to judgment as a matter of law because, even if Reynolds had filed a
summary judgment response, appellant was unable to prove any damages in the
underlying discrimination lawsuit.  The trial court granted appellees= motion and this
appeal followed.

Discussion

In a single issue on appeal, appellant challenges the trial
court=s final summary
judgment.  In this issue, appellant contends the trial court erred when it
granted appellees= motion for summary judgment because there
were genuine issues of material fact precluding the granting of appellees= motion.

A.      The
Standard of Review








In their motion for summary judgment, appellees did not
specify whether they were making a traditional motion for summary judgment or a
no-evidence motion.  Compare Tex. R. Civ. P. 166a(c), with Tex. R. Civ. P. 166a(i).  Because the two forms of summary judgment are
distinct and invoke different standards of review, before we can reach the
merits of this appeal, we must make the initial determination as to which type
of summary judgment is at issue.  Since a motion that does not clearly and
unambiguously state that it is being filed under Rule 166a(i) does not give the
nonmovant notice that the movant is seeking a no-evidence summary judgment, we
will construe it as a traditional motion under Rule 166a(c).  Adams v.
Reynolds Tile and Flooring, Inc., 120 S.W.3d 417, 420 (Tex. App.CHouston [14th
Dist.] 2003, no pet.); see Michael v. Dyke, 41 S.W.3d 746, 750 (Tex.
App.CCorpus Christi
2001, no pet.) (holding when a motion for summary judgment fails to
unambiguously state it is filed under Rule 166a(i), and does not strictly
comply with the requirements of that rule, it will be construed as a traditional
motion for summary judgment). 

The movant for a traditional summary judgment has the
burden to show there is no genuine issue of material fact and it is entitled to
judgment as a matter of law.  Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d
546, 548 (Tex. 1985).  In determining whether there is a genuine fact issue
precluding summary judgment, evidence favorable to the non-movant is taken as
true and the reviewing court makes all reasonable inferences and resolves all
doubts in the non-movant=s favor.  Id. at 548B49.  We review a
trial court=s summary judgment de novo.  Valence
Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005).  In addition,
when reviewing a summary judgment, we cannot read between the lines, infer or
glean from the pleadings or proof any grounds for summary judgment other than
those expressly set forth before the trial court in the motion itself.  Johnson
v. Felts, 140 S.W.3d 702, 706 (Tex. App.CHouston [14th
Dist.] 2004, pet. denied).  A defendant who conclusively negates at least one
of the essential elements of a plaintiff=s cause of action
is entitled to a summary judgment on that claim.  IHS Cedars Treatment Ctr.
of DeSoto, Tex., Inc. v. Mason, 143 S.W.3d 794, 798 (Tex. 2004).  Only when
the defendant establishes its right to summary judgment, does the burden shift
to the plaintiff to come forward with competent controverting evidence raising
a genuine issue of material fact.  Centeq Realty, Inc. v. Siegler, 899
S.W.2d 195, 197 (Tex. 1995).

B.      Elements
of a Legal Malpractice Cause of Action








To prevail on a legal malpractice claim, a plaintiff must
show that (1) the attorney owed the plaintiff a duty, (2) the attorney breached
that duty, (3) the breach proximately caused the plaintiff=s injuries, and
(4) damages occurred.  Alexander v. Turtur & Assoc., Inc., 146
S.W.3d 113, 117 (Tex. 2004).  When the plaintiff=s allegation is
that some failure on the attorney=s part caused an
adverse result in prior litigation, the plaintiff must produce evidence from
which a jury may reasonably infer that the attorney=s conduct caused
the damages alleged.  Id.  In a legal malpractice suit arising out of an
attorney=s handling of
prior litigation, the plaintiff=s damages in the malpractice suit are the
damages the plaintiff would have recovered in the underlying lawsuit.  Cosgrove
v. Grimes, 774 S.W.2d 662, 665B66 (Tex. 1989).

In this appeal, the only basis for summary judgment
asserted by appellees in their motion, and thus the only ground at issue here,
was that A[appellant] cannot prove any damages, even if Reynolds
had filed a [summary judgment] response.@  See Shaun T.
Mian Corp. v. Hewlett-Packard Co., 237 S.W.3d 851, 855 (Tex. App.CDallas 2007, rule
53.7(f) motion granted) (stating an appellate court cannot affirm a summary
judgment on grounds other than those specified in the motion).   Accordingly,
in this appeal we must initially determine whether appellees, as the summary
judgment movants, met their burden and established there was no genuine issue
of material fact as to the existence of appellant=s damages, thus
entitling them to judgment as a matter of law.  Only if we decide the answer to
that initial question is yes, must we then decide whether appellant came
forward with competent controverting  summary judgment evidence raising a
genuine issue of material fact.

C.      Did
Appellees Satisfy Their Summary Judgment Burden?

1.       What
Damages are Recoverable in a Title VII Sexual Harassment and Retaliation Suit?

Under Title VII, a successful plaintiff may recover
equitable relief, primarily back pay, compensatory and punitive damages, and
attorney=s fees.[2] 
42 U.S.C.A. ' 1981a (West 2003), 42 U.S.C.A.' 2000e-5(g)&
(k) (West 2003).








Compensatory damages can be awarded to a successful Title
VII plaintiff for future pecuniary losses, emotional pain, suffering,
inconvenience, mental anguish, loss of enjoyment of life, and other
nonpecuniary losses.   42 U.S.C.A. ' 1981a(b)(3). 
Emotional distress refers to an individual=s emotional pain
and suffering, mental anguish, and loss of enjoyment of life.  Giles v. Gen.
Elec. Co., 245 F.3d 474, 488 n. 24 (5th Cir. 2001).  To merit an award
greater than nominal damages, two requirements must be met.  Id. at
488.  First, the plaintiff must provide specific evidence of the injury.  Id. 
Second, the plaintiff must make more than vague allegations to support the
claim.  Id.

With regard to the first requirement, there must be a
specific, discernable injury to the plaintiff=s emotional state,
and it must be proven with evidence showing the nature and extent of the
injury.  Id.  Damages for emotional distress can be awarded if a
plaintiff suffers sleeplessness, anxiety, marital problems, stress, and
humiliation.  Migis v. Pearle Vision, Inc., 135 F.3d 1041, 1047 (5th
Cir. 1998).  Under Title VII, damages for emotional distress can be awarded
based exclusively on the testimony of the plaintiff.  Id. at 1046B47.  With regard
to the second requirement, that the allegations not be vague, testimony that
details anxiety, sleeplessness, loss of self-esteem, marital hardship, or
stress is specific enough to support an award of compensatory damages for
emotional distress under Title VII.  Id. at 1047; see Farpella-Crosby
v. Horizon Health Care, 97 F.3d 803, 809 (5th Cir. 1996) (holding that the
specificity requirement was met by the plaintiff=s testimony that
she felt Avery disgusted,@ Ahopeless,@ Avery embarrassed,@ Avery belittled,@ Aabout two inches
high,@ and Astarted to feel
pretty stupid@).








Punitive damages may be recovered by a successful Title VII
plaintiff if that person Ademonstrates that the [defendant] engaged
in a discriminatory practice or discriminatory practices with malice or with
reckless indifference to the federally protected rights of an aggrieved
individual.@  42 U.S.C.A. ' 1981a(b)(1).  Due
to the nature of the injury that results from discrimination, a successful
Title VII plaintiff may recover punitive damages even in the absence of an
award of compensatory damages.  Abner v. Kan. City S. R.R. Co., 513 F.3d
154, 160 (5th Cir. 2008).

2.       Appellees
Did Not Meet Their Summary Judgment Burden.

The only ground asserted by appellees in their motion for
summary judgment was appellant=s lack of damages in her underlying
discrimination suit.  In their brief in this appeal, appellees admit they
breached the duty of care they owed appellant in the underlying lawsuit.  While
they admitted liability, appellees assert they were still entitled to summary
judgment because appellant had no damages in the underlying suit.  Appellees
attached little competent summary judgment evidence to their motion.  Appellees
pointed out, both in their motion and in their appellate brief, the fact
appellant had not designated any experts to testify as to her economic or
mental distress damages. Appellees  attached the memorandum opinion issued by
the federal district court in the underlying lawsuit as well as Methodist=s motion for
summary judgment along with its attached exhibits, including excerpts from
appellant=s deposition.  Appellees contend these items
establish, as a matter of law, appellant suffered no lost wages as a result of
her termination by Methodist in March 2002.








We disagree that, under the appropriate standard of review,
this evidence establishes as a matter of law appellant suffered no damages as a
result of appellees admitted malpractice.  Since mental distress damages can be
awarded in a Title VII suit based exclusively on the testimony of the
plaintiff, the lack of medical records or a testifying medical expert does not
preclude appellant from recovering mental distress damages.  Migis, 135
F.3d at 1047.  Appellant=s deposition excerpts also do not
disprove the existence of economic and emotional distress damages as they do not address
appellant=s damages in the underlying lawsuit, but instead focus
on the allegedly discriminatory acts underlying her federal lawsuit.  The other
exhibits attached to Methodist=s motion do not prove appellant did not
suffer economic damages as a result of Methodist=s alleged
discrimination.  Instead, the exhibits establish, at most, that appellant was
paid the same once she was transferred to the blood bank.  The exhibits do not
address how long appellant was unemployed following her termination by
Methodist or how long it took appellant to find new employment.  In addition,
the mere fact that, at the time appellees filed their motion for summary
judgment, appellant had not designated an expert to testify on the existence and
the amount of her economic damages does not, standing alone, prove appellant
did not have any economic damages.  Title VII plaintiffs, due to the nature of
discrimination injuries, can still recover punitive damages even in the absence
of economic or emotional distress damages.  See Abner, 2008 WL 40106 at
*6 (stating A[i]ndeed, there is some unseemliness for a defendant
who engages in malicious or reckless violations of legal duty to escape either
the punitive or deterrent goal of punitive damages merely because either good
fortune or a plaintiff=s unusual strength or resilience protected
the plaintiff from suffering harm@).  Because
appellees only attacked the existence of appellant=s economic and
emotional distress damages in the underlying lawsuit, and did not attempt to
prove appellant was not the victim of discriminatory conduct motivated by
malice or reckless disregard of appellant=s federally
protected rights, they have not established, as a matter of law, appellant
could not recover punitive damages.  Finally, appellees= reliance on the
memorandum opinion issued by the federal district court in the underlying
discrimination suit is misplaced.  By attempting to use this opinion, which was
based on appellant=s deemed admissions and lack of response
to Methodist=s motion for summary judgment, as evidence against
appellant, appellees, who have admitted they breached the duty of care they
owed appellant in the handling of appellant=s discrimination
lawsuit, seek to benefit from their own admitted malpractice.  Because this
memorandum opinion was based on deemed admissions resulting from appellees= failure to answer
Methodist=s requests for admissions and appellees= failure to file a
response to Methodist=s motion for summary judgment, we hold
this memorandum opinion does not constitute competent summary judgment evidence
which can support the granting of a motion for summary judgment.








We hold appellees did not conclusively negate the existence
of appellant=s damages in the underlying lawsuit, thus the burden
never shifted to appellant to produce summary judgment evidence in response. 
Because appellees failed to carry their summary judgment burden, the trial
court erred when it granted appellees= motion for
summary judgment.  Accordingly, we sustain appellant=s single issue on
appeal.

Conclusion

Because we have sustained appellant=s single issue on
appeal, we reverse the judgment of the trial court and remand this case to the
trial court for further proceedings consistent with this opinion.

 

 

/s/      John S. Anderson

Justice

 

 

Judgment rendered and Opinion filed
March 13, 2008.

Panel consists of Chief Justice Hedges
and Justices Anderson, and Boyce.









[1]  Appellant admits her common law causes of action are
barred by limitations and thus they are not at issue in this appeal.





[2]  In addition to back pay, under Title VII, a
successful plaintiff may also recover front pay, in lieu of reinstatement, as
compensation for lost future wages and benefits.  Green v. Adm=r of Tulane Educ. Fund, 284 F.3d 642, 658 (5th Cir. 2002) abrogated on
other grounds by Burlington N. & Santa Fe Railway Co. v. White, 548
U.S. 53, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006).