**Appellants' Motion for Rehearing Overruled; Memorandum Opinion of December 9, 2014 Withdrawn; Affirmed and Substitute Memorandum Opinion filed April 21, 2015.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-13-00459-CV

---

## ALLSTATE INSURANCE COMPANY, ALLSTATE INDEMNITY COMPANY, ALLSTATE PROPERTY & CASUALTY INSURANCE COMPANY, ALLSTATE COUNTY MUTUAL INSURANCE COMPANY AND ALLSTATE FIRE & CASUALTY INSURANCE COMPANY,
**Appellants**

## V.

## REHAB ALLIANCE OF TEXAS, INC. D/B/A STEEPLECHASE FAMILY HEATLHCARE AND STEEPLECHASE PAIN MANAGEMENT & SURGICAL ASSOCIATES, SHEILA SMITH F/K/A SHEILA GOYER, DENNIS SMITH, D.C., THE DIAGNOSTIC & INJURY CENTER OF HOUSTON, LLC AND IHSAN SHANTI, M.D.,
**Appellees**

---

### On Appeal from the 11th District Court
### Harris County, Texas
### Trial Court Cause No. 2009-81354A

---

## S U B S T I T U T E   M E M O R A N D U M   O P I N I O N

We overrule appellants' motion for rehearing, withdraw our memorandum opinion issued December 9, 2014, and issue this substitute memorandum opinion.

Appellants, Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate County Mutual Insurance Company, and Allstate Fire & Casualty Insurance Company ("Allstate") appeal an order granting summary judgment in favor of Rehab Alliance of Texas, Inc. d/b/a Steeplechase Family Healthcare and Steeplechase Pain Management & Surgical Associates, Sheila Smith f/k/a/ Sheila Goyer, Dennis Smith D.C., The Diagnostic & Injury Center of Houston, L.L.C., ("Rehab Alliance") and Ihsan Shanti, M.D. We affirm.

## I. BACKGROUND

Allstate is an insurance company which has issued automobile policies in Texas since January 2004. Rehab Alliance is a chiropractic clinic which provided services including chiropractic care, orthopedic and pain management, epidural steroid injections, and radiologists' services to persons injured in car accidents. As part of its services, Rehab Alliance also provided reports to attorneys outlining injuries and treatment plans for its patients in order to facilitate settlements of their claims for damages.

Allstate claims that Rehab Alliance solicited referrals from attorneys representing such claimants. In those situations, Rehab Alliance would treat the injured parties under a "letter of protection" with the patients' attorneys. According to Allstate, these letters provided that Rehab Alliance would seek to recover payment of its bills from its patients only if there were a recovery reached by way of settlement or judgment; that is, the patients were released from financial responsibility for health care services if there was no settlement or judgment with an insurer. Allstate alleged these "letters of protection" were concealed from it

2

because they were not included as a part of the settlement packages that attorneys for the various patients (claimants) presented to Allstate.

Allstate sued Rehab Alliance and Shanti for fraud, conspiracy, and unjust enrichment, alleging that since 2004, Rehab Alliance made material misrepresentations, including:

- Providing services as if a medical doctor had performed the service, when a nurse practitioner had performed the service

- Sending bills for services and other consultations incurred by the patient, when the contract for such procedures was based on a fee splitting agreement with lay persons and, thus, represented the unauthorized and corporate practice of medicine

- "Upcoding" or improperly coding treatment, representing that a patient incurred health care costs and remained financially liable, when an agreement releasing him or her from liability was concealed from Allstate

- Stating various charges were made as if the service were attended by a medical professional, but was in fact, unattended

- Noting that MRIs, surgical injection procedures, and other referrals for further treatment were medically necessary, when they were not, and that MRI reports often included false identification of bulges or herniations to vertebral discs

- Medical doctors and Rehab Alliance and/or other diagnostic clinics had "fee splitting" arrangements or other payment arrangements which were not authorized.

- Failing to disclose that medication prescriptions and refills were made by unauthorized persons, yet the costs for such medications were billed as if made by a medical doctor

- Concealing patient notes showing that medications were often prescribed or refilled by lay persons, using the name of a medical doctor under contract, or otherwise compensated, through Rehab Alliance.

Allstate asserted that had it "been made aware of these methods and practices, it would not have considered such billings in settling the claims" of the

injured persons treated by Rehab Alliance. Specifically, Allstate claimed certain of the sums charged were included in the medical and billing records which were a part of over 100 demand packages which various attorneys presented to Allstate in order to settle their clients' claims. These claims were for personal injury damages, settled between the years 2004 and 2008. Allstate filed suit in December 2009, seeking to recover the sums it paid for services for which the patients were released from liability and which it claims were improperly billed or coded, improperly supervised, or not medically reasonable or necessary, and which were included as part of the total package which Allstate considered in settling the claims.

In 2012, Rehab Alliance filed a no-evidence motion for summary judgment. It urged there was no evidence to support the injury element of Allstate's fraud clam. Rehab Alliance urged that conspiracy failed because it required proof of the underlying tort of fraud, conspiracy failed.[1] Shanti joined in Rehab Alliance's motion. Shanti also filed both a no-evidence[2] and traditional motion for summary judgment. Shanti urged, *inter alia,* that Allstate's unjust enrichment claim failed because there is no evidence Shanti received a benefit from Allstate. Rehab Alliance joined in Shanti's motion as well. Allstate responded to both motions.

On December 13, 2012, the trial court signed an order granting summary judgment without specifying the grounds. Allstate appealed the order.

## II. STANDARD OF REVIEW

In a no-evidence motion for summary judgment, the movant must state the

---

[1] In 2010, Rehab Alliance previously filed a no-evidence motion for summary judgment which the trial court denied. Shanti did not file a motion for summary judgment at that time.

[2] Shanti urged a no-evidence motion for summary judgment as to Allstate's standing to prosecute this suit. A no-evidence motion cannot be used to challenge a trial court's subject matter jurisdiction. *See Green Tree Serv., LLC v. Woods*, 388 S.W.3d 785, 792–94 (Tex. 2012).

4

specific element or elements of each cause of action on which it urges there is no evidence. *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 207 (Tex. 2002). In reviewing the no-evidence motion, we consider only those grounds set forth in the motion. *See Johnson v. Felts*, 140 S.W.3d 702, 706 (Tex. App.—Houston [14th Dist.] 2004, pet. denied). To defeat a no-evidence motion, the non-movant is not required to marshal all of its proof, but it is required to point to evidence raising a fact issue on the challenged elements of the cause of action. *Johnson*, 140 S.W.3d at 207. Where, as here, the trial court's order does not specify the grounds for its ruling, we must affirm the summary judgment if any of the grounds presented to the trial court are meritorious. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003).

We review the motions *de novo*. *See Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id*.

## III. ANALYSIS

### A. Fraud and Conspiracy

In its petition, Allstate contended:

Defendants [Rehab Alliance and Shanti] intended Allstate to act upon these misrepresentations, and Allstate was damaged when it relied on the representations *and paid sums in settlements of the claims*. Had Allstate been aware of these methods and practices, Allstate *would not have considered such billings in settling the claims*.

. . .

Defendants willfully combined, conspired, and agreed with each other and others to defraud Plaintiffs. . . . As a direct and proximate result of Defendants' conduct, Plaintiffs have paid sums in regard to the

5

automobile collisions in which the claimant went to a Rehab Alliance clinic, to which Defendants were not legally entitled.

(Emphasis added).

Thus, Allstate's claim of "injury" arising out of its claim of fraud is the portion of the "sums in settlements of the claims" paid to claimants which were made as a result of the alleged fraud of Rehab Alliance and Shanti.

As noted above, by virtue of the motions and the motions in which both parties joined, Rehab Alliance and Shanti challenge the injury element of the fraud claim, and challenge the conspiracy claim, asserting if there is no underlying tort of fraud, there can be no claim for conspiracy. While Shanti's no-evidence motion did not identify a *specific* element of the claims on which there is no evidence, Rehab Alliance urged Allstate had no evidence of any injury that is not merely speculative because Allstate had no evidence to show what amounts it should not have paid.[3] Rehab Alliance asserted that while Allstate:

> . . . alleges it was injured by offering settlement amounts that considered bills it would no longer consider, Allstate admits that it cannot point to reduced settlement amount that would have been offered and accepted by any of the 100+ claimants in the underlying personal injury claims. Thus, . . . Allstate's purported injury is entirely speculative and cannot support a claim for fraud.

To prove fraud, Allstate must establish proof of each of the following elements: (1) a material representation was made; (2) the representation was false; (3) at the time it was made, Shanti and/or Rehab Alliance knew the representation was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) Shanti and/or Rehab Alliance made the representation with

---

[3] We have carried with the case Rehab Alliance's Motion to Supplement the Record with Exhibits 3–5 it claims were provided to the trial court at the time it filed its motion for summary judgment, but which were not contained in the file and not contained in the record on appeal. We overrule the motion to supplement.

the intent that Allstate would act on it; (5) Allstate acted in reliance on the representation; *and*, (6) Allstate suffered injury. *See Italian Cowboy Partners v. Prudential Ins.*, 341 S.W.3d 323, 337 (Tex. 2011); *Moore v. Altra Energy Technologies, Inc.*, 321 S.W.3d 727 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

The elements of civil conspiracy are: (1) two or more person; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages. *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996). A claim of conspiracy necessarily implicates liability for an underlying tort. *See Trammell Crow Co. No. 60 v. Harkinson*, 944 S.W.2d 631, 635 (Tex. 1997); *Carroll v. Timmers Chevrolet, Inc.*, 592 S.W.2d 922, 925 (Tex. 1979). Where summary judgment is proper on fraud as the underlying tort, it is likewise proper on conspiracy to commit fraud. *See Wolstein v. Aliezer*, 321 S.W.3d 765, 775 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

The damages under the fraud and conspiracy to commit fraud claim would be the portion of Allstate's out-of-pocket payments that were made based on the alleged misrepresentations, which (as explained in Part III.B. below) would be the same on this record as the amount of any monetary benefit unjustly retained under the unjust enrichment theory. It is this element which Rehab Alliance challenged in its no-evidence motion for summary judgment; that is, if there was no evidence of injury to support the fraud claim, the claim failed on this basis. Additionally, if the fraud claim does not survive, then the conspiracy claim also failed because it must be based on an underlying tort. With these principles in mind, we examine the summary judgment evidence.

### 1. Allstate's Evidence.

Responding to this no-evidence challenge, Allstate referenced a May 2009

letter informing Allstate of questions concerning Shanti's contractual arrangement with Rehab Alliance, and causing Allstate to question his charges. The letter stated Shanti performed procedures in a "pain suite" at Rehab Alliance, he did not participate in billing, and his remuneration was not based on billing. The letter concluded that upon Rehab Alliance's discovery of a question of his practice methods, Shanti's employment was terminated. Another letter with which Allstate became aware was the patients' letters of protection, as one was inadvertently included in a demand package presented to Allstate by an attorney representing one of Rehab Alliance's patients.

Allstate then summarized the impropriety of various charges and procedures included in the Rehab Alliance bills, and referred to the 2010 affidavits of six Allstate claims representatives. All stated they were unaware of the misrepresentations as to services provided, billing methods, supervision of patients and other matters summarized above, and that no audit tools would detect such misrepresentations. They further stated that had they known of the misrepresentations and the patients' release of financial liability, they "would view the [settlement of bodily injury] claims with higher scrutiny."

Allstate also offered the 2010 affidavit of Aaron Patterson, SIU ("special investigation unit") analyst for Allstate, with its attached spreadsheets, and offered various portions of his 2012 deposition. Patterson testified he was familiar with the claims files, containing documents generated by Rehab Alliance. These documents were provided to Allstate claims representatives for consideration of settlement. Patterson also testified the claims representatives were unaware of the matters relating to patient release of liability, billing, compensation and "fee splitting" arrangements, how and by whom services were performed, and that computer tools Allstate uses to audit claims cannot identify such misrepresented

8

charges.  Patterson and the claims representatives testified they were unaware of the many different practices which Allstate viewed as part of Rehab Alliance's routine, many of which are enumerated above, including "any practice of the providers to withhold . . . documents showing release of financial responsibility for clinic bills . . . and attorney direction of the treatment and diagnosis tests the patient was to receive."[4]

Patterson testified he was made aware of questions concerning Shanti's performance and compensation, he learned patients were not financially responsible for bills, and "patient update" sheets were withheld from Allstate.  He stated if a patient is released from any financial responsibility, the amounts of health care charges would not be included in a bodily injury settlement offer.  Other charges, such as those for medications and charges for services of medical doctors, would not be included when they were not performed by a medical doctor or other appropriate medical personnel, or when the physician was involved in a "fee splitting" agreement.  Patterson also stated, as did the claims representatives, that had Allstate been made aware that charges for service "did not correspond to the time actually spent with a patient . . . such charges would not be included in bodily injury settlement offers."  Patterson further testified Allstate learned there were treatments which were performed when they were not medically necessary.

Finally, Patterson referred to two spreadsheets, stating they included figures of over one hundred "total settlement amounts, and allowed amounts for various

---

[4] The claims representatives' affidavits also included testimony that they were not aware of other practices, such as requiring up-front partial payment for some surgical injection procedures, having agreements with medical doctors performing consultation examinations and splitting the fees with Rehab Alliance, and billing of fees at the rate of a medical doctor when the services were performed by nurse practitioners or physician's assistants, and were unaware that non-medical employees were prescribing medication to patients using the name of a medical doctor to do so.

procedures and tests, such as epidural steroid injections . . . ." The spreadsheet also included a summary of bills submitted under Rehab Alliance invoices, "clinic allowed amount," and "ESI/surgery allowed amount." Patterson testified certain referrals for further testing and procedures, along with the charges for them, were unnecessary and excessive; however, he did not know what amounts Rehab Alliance received from the actual settlements. He testified that the total amount of damages Allstate sought to recover was $415,744.13. Patterson explained the spreadsheets did not reflect what amounts were actually received by claimants because he had no knowledge of the claimants' fee arrangement with their respective attorneys.

In his 2012 deposition, Patterson outlined the factors which claims adjusters take into account in determining what offer to extend in settlement. Those included liability facts, property damage of the injured party's vehicle, the actual injury of the party, medical bills, pre-existing conditions, medical conditions, loss of earnings, extent of medical treatment, and the adjuster's independent judgment. The claims representatives also utilized computer tools, such as Colossus and the Mitchell Expert Claim Summary ("Mitchell"). Patterson explained that Colossus helps the claims adjuster determine the *overall* value of a claim, the amount of damages, medical bills, pre-existing conditions, and medical offsets where multiple claims are involved. Mitchell, a computer audit system, reviews the amount of actual charges input into the system. In making their decisions, the claims representatives or adjusters do not rely solely on Colossus and Mitchell. Rather, they maintain and utilize independent judgment in assessing each claim.

Patterson acknowledged that arriving at a settlement figure involved a significant amount of judgment, taking into consideration what is logical for Allstate and the claimant. He also stated that had the claims not settled, Allstate

would have incurred additional litigation expenses. Patterson testified he had not reviewed the claims to determine whether policy limits would have been offered on those claims, if Allstate had been made aware of the misrepresentations. Stated differently, Patterson never testified Allstate may not have offered policy limits, or any other sum, to settle the claims had it been made aware of questions with regard to medical bills, providers, and the patients' release of financial liability.

Further, he testified he did not know whether claims would have been handled differently, whether they would have settled, or would have settled for a lesser amount, had the charges Allstate questioned not been included. Patterson could not state a different amount would have been offered and accepted by a claimant, had Allstate been made aware of the alleged misrepresentations prior to making and finalizing the offers of settlement. In sum, Patterson's testimony as to damages was a quantification of the amounts Allstate alleges it *would not have included* in a settlement offer had they been made aware of false or misrepresented facts. He did not quantify the amounts Allstate would have saved in overall settlements paid, if any, or in litigation expenses it did not incur because it settled the claims, and he did not estimate the amount of litigation expenses Allstate may have incurred if claims had not been settled.

## 2. Application of Law to the Evidence.

A claim of injury or damages cannot be sustained when based on an "entirely hypothetical, speculative bargain that was never struck and would not have been consummated." *Formosa Plastics Corp. USA v. Presidio Engineers and Contractors, Inc.*, 960 S.W.2d 41, 50 (Tex. 1998). If damages are too remote, uncertain or based purely on conjecture, they cannot support recovery and summary judgment is proper. *See Reardon v. LightPath Techs., Inc.*, 183 S.W.3d 429, 439 (Tex. App.—Houston [14th Dist.] 2005, pet. denied).

As explained above, Rehab Alliance contended Allstate had no evidence to support the requisite elements of "injury" (damages) on its fraud claim and unconscionable benefit on its unjust enrichment claim and, because the fraud claim failed, conspiracy necessarily failed. The damages Allstate sought to recover are sums it had paid based on what it alleged to have been misrepresentations by Rehab Alliance and the medical providers with whom Rehab Alliance worked. As outlined above, Allstate's evidence in support of the theory of injury is: (a) affidavit testimony about Allstate's settlement procedures; and (b) spreadsheets that show "total settlement amounts, and allowed amounts for various procedures and tests, such as epidural steroid injections, 'attended' electrical stimulation, and services purportedly provided by Dr. Covington."

Allstate's theory of injury is not tied to any specific claim or claims that form the basis of the suit. First, Allstate's injury theory supposes that: (1) if Allstate had known about the alleged fraud or deception of the appellees, it would not have offered as much in settlement to the personal injury claimants—nonparties here; (2) if Allstate had offered less to the personal injury claimants, the claimants would have taken the lesser settlement offer; or, (3) if Allstate had offered less to the personal injury claimants, and the claimants had refused the offer, the dispute would have proceeded to trial and Allstate or the Allstate insureds would have prevailed; and (4) the differential between what Allstate offered and the amount it would have offered or ultimately paid is, Allstate posits, the amount of injury Allstate has suffered. To recover under any of these scenarios, Allstate would be forced to either seek to unwind the settlements with the 107 claimants, and begin the process again, or it would be required to quantify the value of the settlements with each individual claimant, without the questioned charges being included. Allstate is not seeking to unwind the settlements and is

12

making no effort to link its theory of damage to any actual claim.

While the Allstate affiants testified if Allstate had known of appellees' alleged fraud, Allstate "would not have included" certain categories of deceptive billings within the total settlements offered to the various 107 claimants, neither Allstate's affiants nor spreadsheets purports to identify a single claimant to whom Allstate offered an excessive sum. *See El Dorado Motors, Inc. v. R.E. Koch*, 168 S.W.3d 360, 367–68 (Tex. App.—San Antonio 2005, no pet.) (holding spreadsheet and accompanying testimony which failed to establish how losses were calculated and making no comparisons to other expenses is no evidence of out-of-pocket damages); *see also Household Finance Corp. v. DTND Sierra Investments*, LLC, No. 04-13-00033, 2013 WL 5948899, at * 11 (Tex. App.—San Antonio Nov. 6, 2013, no pet.) (mem. op) (concluding testimony was speculative and conclusory where the defendant "merely gave totals" and did not explain how he arrived at the totals, other than by general reference); *Blue Hill Chiropractic Group, Inc. v. Encompass Ins. Co*., Nos. SUCV 200502075, SUCV 200502076, SUCV200502077 and SUCV2005200605269, 2011 WL 3672049, at *3–8 (Mass. Super. May 5, 2011) (allowing summary judgment on insurer's claims where there was evidence of a fraudulent scheme involving clinics and chiropractors and spreadsheets identifying specific patient claims, summarizing medical and business records and revealing precise amounts paid). The affiants, claims representatives, would simply have "viewed the claims with higher scrutiny." None testified the claims would not have been settled and none offered testimony as to how the exclusion of these charges would have impacted the viability of the settlements, or how, if at all, the exclusion of these charges would have impacted the total amount of each settlement.

The question unanswered and unaddressed in the summary judgment

evidence is how the alleged fraud impacted the settlements at issue in this case. We agree with Allstate that it was not required to establish the amount of its damages in response to the summary judgment motions. However, this failing in Allstate's evidence, we conclude, concerns the fact of legal damages. "Uncertainty as to the *fact* of legal damages is fatal to recovery, but uncertainty as to the *amount* will not defeat recovery." *McKnight v. Hill & Hill Exterminators*, 689 S.W.2d 206, 207 (Tex. 1985) (citing *Southwest Battery Corp. v. Owen*, 115 S.W.2d 1097, 1099 (Tex. 1938)) (Emphasis added). Here, Allstate presented evidence to support its theory of injury; however, it did not present evidence on the *fact* of legal damages resulting from the inclusion of allegedly fraudulent charges as well as valid charges in certain claims, which is fatal to its recovery. *Cf. State Farm Mutual Auto. Ins. Co. v. Giventer*, 212 F.Supp.2d 639, 650–53 (N.D. Tex. 2002) (holding insurer is entitled to recover under RICO and common law fraud because the record contained evidence of the amount of expenses paid due to fraud and wilful conduct resulting from the scheme of intentionally-caused automobile accidents).

Other cases on which Allstate relies are distinguishable given their procedural context and do not support Allstate's recovery under the facts here. *See Allstate Ins. Co. v. Seigel*, 312 F.Supp.2d 260, 269–270 (D.C. Conn. 2004) (denying certain portions of a Rule 12(b)(6) motion in a RICO and state law fraud action where Allstate pleaded sufficient facts in order to obtain recovery of expenses incurred in reviewing, adjusting, investigating and litigating false and fraudulent claims resulting from a physician's reports on patients involved in automobile accidents. The Court's task "in ruling on a Rule 12(b)(6) motion is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof."); *State Farm Mutual*

*Auto. Ins. Co. v. Kugler*, No. 11-80051, 2011 WL 4389915, at \*8 (S.D. Fla. 2011) (denying motion to dismiss RICO and fraud claims on the basis that State Farm, as the party directly injured by the alleged fraudulent conduct, was entitled to recover damages to the extent its "settlement decision making was influenced and distorted by false billings generated by the defendants") (citing *State Farm Mutual Auto. Ins. Co. v. Lincow*, 715 F.Supp.2d 617 (E.D. Pa. 2010)) (in insurance fraud case where victims of automobile accidents inflated the costs of medical care, the court concluded there was sufficient evidence that treatment and testing was fraudulent and that insurer made payments in reliance on the fraudulent medical records).

In other words, Allstate argues that its evidence of injury due to fraud is not speculative because it is included in the amount it paid to appellees via the settlement agreements. Allstate alleged it discounted the amount offered the claimants on their claim as a whole, but Allstate would have offered the claimants nothing on the medical bills from appellees. This theory assumes that had Allstate offered the claimants less, the claimants would have accepted that lesser amount in settlement. Hence, the injury Allstate claims it suffered by the fraud is the total amount that Allstate offered and paid, less the amounts it claims it would not have offered. This argument does not account in any way for the amount Allstate would have actually *paid* on each claim under the scenario it poses. In the absence of evidence to support Allstate's contention of what it would have paid, there is no evidence that Allstate suffered an actual injury by not having had the opportunity to offer the claimants less.

Allstate's evidence in this case suffers from the same speculative infirmity as evidence on analogous facts in *Allstate Insurance Co. v. Receivable Finance Company, L.L.C.*, 501 F.3d 398, 411–12 (5th Cir. 2007). We recognize the procedural posture of that case is different from the present one; however, we

believe the rationale assists. In reviewing a judgment rendered in favor of Allstate, the Fifth Circuit reversed a jury verdict for fraud, holding Allstate had no evidence of actual reliance on misrepresentations because it had no evidence that adjusters relied on the allegedly fraudulent medical records in deciding whether to settle a claim:

> As to settlements, we also note that there are a whole host of reasons—other than reliance on reports from the adverse party's doctors, that might lead a part to settle, viz: "[S]everal factors other than reliance on the truth of an opponent's allegations may influence a party's ultimate decision to settle disputed claims in a lawsuit, including the nature of the liability facts, the nature of the damages, . . . discovery, trial preparation, and trial itself."

(citing *Atlantic Lloyds Ins. Co. v. Butler*, 137 S.W.3d 199, 227 (Tex. App.—Houston [1st Dist.] 2004, pet. denied)). *Id.* at 412.

Further, the court held there was "no evidence introduced regarding what the defendants-appellants obtained through fraud as opposed to their legitimate provision of health care, the amount of the award could only be based on mere conjecture or speculations. Thus, it cannot be sustained." *Id.* The court was "sympathetic" and "deeply shocked and saddened at the dishonest practices" of many parties, but stated it was "not within our discretion to create a new Texas cause of action . . . ." *Id.* at 411.

Because there is no evidence that Allstate suffered actual legal injury through fraud, the no-evidence motions for summary judgment were proper on Allstate's fraud claim. Given that Allstate's conspiracy claim depended on its fraud claim, summary judgment was also proper on the conspiracy claim.

## B.     Unjust Enrichment.

In its petition, Allstate incorporates the factual background set forth above and asserts Shanti and Rehab Alliance were enriched by obtaining the sums made

part of the settlements.  Specifically, Allstate alleges:

> Defendants have unjustly obtained a benefit from Plaintiffs, namely payment for health care expenses that were unreasonable and unnecessary . . . .  Plaintiffs have paid sums, and Defendants have been benefited from those payments, in connection with the treatment, billing, and referral practices arising from automobile collisions at issue.

Unjust enrichment is an equitable theory which allows for the recovery of damages to prevent a party from obtaining a benefit from another by fraud, duress or undue advantage.  *See Industrial III, Inc. v. Kenneth Burns, et al*, No. 14-13-00386, 2014 WL 4202495, at *6 (Tex. App.—Houston [14th Dist.] Aug. 26, 2014, pet. filed) (mem. op.) (citing *Heldenfels Bros., Inc.v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992)); *Walker v. Cotter Props., Inc.*, 181 S.W.3d 895, 900 (Tex. App.—Dallas 2006, no pet.).  Unjust enrichment occurs when a person has wrongfully secured or passively received a benefit which would be unconscionable to retain.  *Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 367 (Tex. App.—Dallas 2009, pet. denied).  Recovery under the unjust enrichment theory is, in essence, the right to recover on an implied contract to repay benefits which were unjust to retain.  *See Bransom v. Standard Hardware, Inc.*, 874 S.W.2d 919 (Tex. App.—Fort Worth 1994, writ denied) (citing *Fun Time Centers, Inc. v. Continental Nat. Bank of Ft. Worth*, 517 S.W.2d 877, 884 (Tex. App.—Fort Worth 1974, writ ref'd)) (holding claim of restitution is generally a claim for money paid which is unjust to retain)).  Thus, it is axiomatic there must be some proof of damages.  *See City of Harker Heights, Tex. v. Sun Meadows Land, Ltd.*, 830 S.W.2d 313, 317 (Tex. App.—Austin 1992, no writ) (approving submission of unjust enrichment issue because there was evidence of specific amounts of money retained).

As to unjust enrichment, Allstate's complaint is the same as its claim of fraud; specifically, it paid more on claims than it should have. Rehab Alliance and Shanti sought summary judgment on this claim, arguing there was no evidence either received an unjust benefit from Allstate. To support its unjust enrichment claim, Allstate relied on the evidence it presented to support its fraud and conspiracy claims, and further urged Rehab Alliance and Shanti failed to disclose the nature of "fee-splitting" agreements between the two (and other physicians who were involved), the amount of various billings, how matters were coded (which would change the sums charged), who approved certain procedures, and in what facilities and for what cost those procedures were performed.

However, none of Allstate's evidence shows that Rehab Alliance and Shanti actually received an unjust benefit from Allstate. First, as part of the original claims, Allstate admits that it never paid the entire claim as presented to it. Second, Allstate adduced no evidence of the value of the services rendered by Rehab Alliance and Shanti. Finally, Allstate supplied no evidence of what, if anything, each claimant paid to Rehab Alliance and Shanti. In the absence of these three components, there is nothing from which to conclude that Rehab Alliance and Shanti were unjustly benefited. Given the lack of evidence on this element of the unjust enrichment claim, the trial court did not err in granting no-evidence summary judgment as to this claim.

Having concluded Allstate failed to present any evidence on the fact of injury, or any evidence of what portion of the settlements constituted a benefit which was unjust for Rehab Alliance or Shanti to retain, we conclude the trial court did not err in granting appellees' no-evidence motions for summary judgment. Therefore, we need not address the remaining issues presented by Allstate's issue or appellees' cross point. We overrule Allstate's sole issue and affirm the

judgment of the trial court.

/s/    John Donovan
Justice

Panel consists of Justices McCally, Busby, and Donovan.